(No. 26221.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES BAKUTIS *et al.* Plaintiffs in Error.

*Opinion filed September 17, 1941.*

HARRY I. BUSCH, and WALTER C. WELLMAN, (VICTOR I. OHRENSTEIN, of counsel,) for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and EDMUND H. GRANT, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiffs in error Charles Bakutis and John Petkus were convicted in the criminal court of Cook county of forcible rape. Their punishment was .fixed at one year in the penitentiary. They bring the cause here claiming insufficiency of evidence, errors in giving instructions and admitting evidence, and prejudicial conduct on the part of the State's attorney.

The prosecuting witness, a young woman of twenty years of age, living on the south side in Chicago, testified that she lived with her brother and his family and was employed as a waitress in an ice-cream store operated by him; that on the evening of July 11, 1940, she attended

a theater on the south side. Leaving the theater about 12:30, she drove her brother's car, in which she had gone to the theater, to a lunch stand and parked it across the street, intending to get a lunch before going home. Plaintiffs in error stopped their car alongside and asked her if she wanted to go for a ride, to which she replied that she had her own car. On returning to her car after having a lunch, she found plaintiffs in error had parked their car near hers. They got out of their car and, as she testified, acted as though they knew her, and when she declined to ride with them they forced her into their car, twisting her arm and one of them holding his hand over her mouth. She testified that she struggled and screamed and endeavored to get out of the car. They drove out into the country to a wooded and secluded place, where the acts complained of were committed.

It is unnecessary to detail her testimony as to what occurred. It is sufficient to say that if her testimony is to be believed, plaintiffs in error were guilty of most sordid and depraved acts, including rape and crimes against nature. She testified that all these acts were committed forcibly; that plaintiffs in error struck and abused her when she sought to resist; that they tore off part of her clothes and forced her to take off the remainder and that it was daylight when they left the forest preserve and drove her to where her car was parked, letting her out, and asked her if they could see her again. She testified that she replied they could come to the house, intending thereby to point them out to her brother as the men who had assaulted her. She testified that as the defendants left her she took the license number of their car and drove to her home where she roused her brother, told him what had happened, and gave him the license number of the car; that she then went to bed and later in the day went to Michael Reese Hospital where she was examined by Dr. Joseph Ehrlich. Her brother's testimony is that the complaining

witness was bruised and excited; that she gave him the license number of the car and he traced it to plaintiff in error Bakutis, and had him arrested. It was later learned that Petkus was the other party involved in the alleged crime. Police officers testified to the arrest of plaintiffs in error who at first declared they did not know the prosecutrix and knew nothing about the matter.

Dr. Ehrlich testified that an examination showed bruises about the face, mouth and neck, and that the private parts were inflamed and swollen. The evidence also was that part of the clothing she was wearing at that time bore spots of blood.

In their testimony on the trial, plaintiffs in error admitted acts of intercourse, but stated that the same were with the consent of the prosecutrix. They denied all use of force, violence or intimidation. They testified that when they saw the prosecutrix at the hamburger stand about 1:00 o'clock, she acted friendly, and when they asked her to have a drink she agreed and they all went to a nearby tavern where they remained for about a half-hour, drinking a glass of wine each. There was offered, in corroboration of this testimony, the testimony of John Jurkus, who testified that he saw plaintiffs in error and a young lady in a tavern at midnight; that they were sitting in a booth and he had a conversation with the men and noticed the girl. He testified he believed it was the prosecutrix. This testimony, however, loses much of its force in view of the admission of both plaintiffs in error that they did not pick up the prosecutrix until 1:00 o'clock, or an hour after the time Jurkus is supposed to have seen them in the tavern. On cross-examination Jurkus admitted that he was a friend of Bakutis and had seen him in that same tavern on several occasions and that he could not be just sure when he did see Bakutis there.

The defense introduced the testimony of one Helen Hendricks, a waitress at a restaurant where plaintiffs in

error claim to have stopped on their return from this trip with the prosecuting witness. She testified that plaintiffs in error were in the restaurant about 4:30 A. M. but she did not see a woman in the car outside. It is apparent from her testimony that she was not testifying to an occurrence on July 12 but appeared to be testifying about a morning in June.

In rebuttal the People introduced the testimony of two police officers that they were acquainted with Bakutis, had known him for some considerable time and knew his reputation for truth and veracity, and that it was bad.

Counsel for plaintiffs in error, in support of their contention that the court admitted improper evidence, point to instances in which witnesses for the People, particularly the prosecutrix, injected conclusions and opinions in the record in response to questions asked her. The record shows that in all such instances where objections were made, the court sustained objections and ordered the improper evidence stricken from the record.

It is also urged here that it was improper to permit the People, in rebuttal, to offer the testimony of witnesses as to the reputation for truth and veracity of plaintiff in error Bakutis, since no character witnesses had been introduced for plaintiffs in error. The rule with reference to attacking the character of a defendant before evidence of good character is offered on his part, has no application to testimony concerning reputation for truth and veracity of a witness. The rule has always been that where a defendant voluntarily takes the stand, his testimony is to be subjected to the same test and treated the same as was the testimony of any other witness. It has always been permissible, in cases where the defendant has voluntarily testified, to offer proof that his reputation for truth and veracity is bad. (*People* v. *Hicks,* 362 Ill. 238; *Dimick* v. *Downs,* 82 id. 570; *Frye* v. *Bank of Illinois,* 11 id. 367;

*Greenleaf on Evidence* (16th ed.) chap. 25, sec. 461a; 28 R. C. L. sec. 210.) It was not error to receive this testimony in rebuttal.

Plaintiffs in error also object to the introduction into evidence of the blood-stained slip worn by the prosecutrix on the night of the alleged attack. In cases such as *People v. Arnold,* 248 Ill. 169, where forcible rape is the issue, and the defendant admits intercourse, the admission of such garment in evidence is said to add nothing to the evidence. However, its admission is not an error justifying reversal of the judgment in this case.

It is contended that the State's attorney was guilty of improper and prejudicial remarks during the cross-examination of the prosecutrix. We have examined this objection and find no foundation for it.

Plaintiff in error Petkus contends that he was denied the right to fully cross-examine the prosecuting witness. The accused were represented by different counsel, each of whom cross-examined the People's witnesses in behalf of his client. Counsel for Petkus cross-examined the prosecutrix after counsel for Bakutis, and the trial court refused to permit the re-asking of questions already asked and answered under cross-examination by counsel for Bakutis, on the ground that they were repetitions of questions already asked and answered. This was not error. *Zetsche* v. *Chicago, Peoria and St. Louis Railway Co.* 238 Ill. 240; *Spohr* v. *City of Chicago,* 206 id. 441.

It is also argued that plaintiffs in error were not proved guilty beyond a reasonable doubt. We have read the abstract and are unable to agree with counsel's contention. A case such as the one before us, is primarily one in which the jury is to determine on which side of the controversy the truth lies. There is much in the record, as we have indicated, corroborating the testimony of the complaining witness. In such cases the court is not warranted in re-

versing the finding of the jury as to the facts. *People* v. *Talbe,* 321 Ill. 80; *Bean* v. *People,* 124 id. 576.

The final objection raised by plaintiffs in error is that the trial court erred in refusing two instructions asked by them. They, however, present but one of such instructions for consideration in their brief. That instruction had to do with the consent of the prosecuting witness. It was argumentative and portions of it purported to be based on evidence that does not appear in the record. It was not error to refuse to give it.

As the record contains no error requiring reversal, the judgment of the criminal court is affirmed.

*Judgment affirmed.*