(No. 35444.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD THOMAS, Plaintiff in Error.

*Opinion filed January 22, 1960.*

440

GERALD W. GETTY, JACK G. STEIN, and JAMES J. DOHERTY, all of Chicago, for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and FRANCIS X. RILEY, and WILLIAM W. WINTERHOFF, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Edward Thomas, the defendant, was found guilty of rape after a trial before a judge of the criminal court of Cook County, and was sentenced to the penitentiary for a term of thirty years. Upon this writ of error he urges that the State failed to prove his guilt beyond a reasonable doubt.

The complaining witness and one Preston Burton testi-

fied that at about 9:00 P.M., on March 31, 1955, when they were walking in the vicinity of 35th Street and Lake Park Avenue in Chicago, they were accosted by the defendant, and compelled by him, at gunpoint, to walk across a foot bridge over the Illinois Central Railroad tracks, to a dark, grassy area in a park just east of the tracks and just west of the Outer Drive. There he forced them to lie on the ground, five or ten feet apart, then took off her blue jeans and panties, raped her and committed an unnatural act upon her. He asked Burton if he wanted to have intercourse with the complaining witness. Burton declined. He then ordered Burton to help her dress, and ordered them to leave. They walked to her home where they arrived about 10:00 P.M.

The complaining witness testified that on the following morning she told her mother what had happened. Her mother took her first to a hospital where she was given "a shot," and then to a police station where the rape was reported and a description of the attacker given. He was described as being five feet eleven or six feet, about two hundred pounds and having a scar on the left side of his face coming down from his eye. On November 18, 1955, she saw a picture of the defendant in a Chicago newspaper, went to the police station and stated this was the man who had raped her.

The defendant testified, and denied ever having seen the complaining witness prior to November of 1955, when he saw her for the first time in the State's Attorney's office. Six character witnesses testified as to his reputation for truth and veracity.

The defendant's first objection is that there is no evidence of penetration. In answer to a question as to what happened after the defendant had taken off her pants the complaining witness answered, "He raped me." Burton testified that the defendant "put his penis in her vagina." As to the testimony of the complaining witness, it is argued

that in the absence of proof that the witness knew and understood the elements of the crime of rape, her testimony failed to establish penetration. And as to the testimony of Burton it is said that "it smacks of rehearsal of phrases alien to his vocabulary." Neither criticism has merit. No particular form of words is required to describe the crime or its elements. In common speech, as well as in legal terminology, the word "rape" means sexual intercourse with a woman by force and against her consent. If there was doubt as to Burton's understanding of the terms that he used, cross-examination was available to the defendant.

Defendant also argues that Burton could not see what occurred. This argument is based on the assumption that he testified that the complaining witness was made to lie down 5 to 10 feet "in back" of him. Burton did not so testify. His testimony was, "Then he made us lay on our stomachs. I was laying straight ahead; she was laying towards me, about five or ten feet away."

There were some discrepancies, however, between the testimony of the complaining witness and that of Burton, and the defendant urges that these discrepancies are so significant as to negative a finding of guilt beyond a reasonable doubt. The complaining witness testified that the defendant first performed an unnatural act upon her, and then raped her. Burton testified that the unnatural act came between two acts of intercourse. The complaining witness testified that she first got a good look at the defendant on the foot bridge when she turned and "asked him not to hurt us. He said if I did as he said that no one would get hurt." Burton testified that when the defendant first approached them they both stood and looked at him "for about three minutes" before he ordered them to cross the bridge. He also testified that while on the bridge defendant "told us not to run or he would shoot." These discrepancies apart, the testimony of the two witnesses as to the entire episode was consistent. It was for the trial court to weigh these

variances in the light of all of the other testimony; they are by no means of such significance that he was required to hold that the defendant's guilt was not proved beyond a reasonable doubt.

The complaining witness testified that although her mother and father were at home when she returned about 10:00 P.M., she did not then tell them what had happened. "The next morning I had a conversation with my mother. I told my mother what happened, the next day, and she took me to Provident Hospital, and there they gave me a shot."

"Mr. Hare [Assistant State's Attorney]:

Q. Did you go to the Provident Hospital with your Mother?

A. Yes, I did.

Q. And when was that?

A. That was on the same morning, About 11:00 o'clock.

Q. Would that be April 2, 1955?

A. Yes.

The Court: April what?

Mr. Hare: April 2, 1955.

Q. Where else did you go on that date, if anywhere?

A. Well, after we went to the Provident Hospital, my mother reported the rape case and took me down to the station."

The defendant urges that it was error to admit this testimony because the complaint was not made until April 2, while the "next morning" was April 1. But the testimony of the witness was that she told her mother the next morning; the calendar date was injected by the prosecutor. And although she acquiesced in the suggested date, the trial judge was aware of the discrepancy, and was able to appraise the situation. Again we see no reason for interfering with his determination.

The complaining witness also testified that when she described the defendant to the police she told them that

she had noticed his voice when he pronounced her name, Sheila, and that "he said it in a very intelligent voice." Her explanation as to how he came to know her name was, "Well, most everybody knows me." The circumstances that the defendant knew the name of the complaining witness is unusual but we do not agree with the defendant that it raised a reasonable doubt as to her identification of him. Nor does a reasonable doubt arise because the hospital records were not produced to corroborate her testimony as to her trip to the hospital with her mother. Since the commission of the crime was proved by the testimony of the complaining witness and her companion, it was unnecessary to produce medical testimony. *People* v. *Fort,* 14 Ill.2d 491, 498.

Finally, the defendant urges that a reasonable doubt as to his guilt arises from the testimony of six character witnesses, who testified in his behalf. Five of these witnesses were his superiors in the corporation for which he had worked for eight years. Each of them testified that his reputation for truth and veracity was excellent. The sixth witness, a woman with whose family he had lived for three years, testified to the same effect. This evidence was admitted without objection although it was not technically admissible because it could relate only to his credibility, and no effort had been made to impeach him. It did not relate directly to the question of his guilt or innocence. At best it tended to strengthen his credibility, and so it can not serve as an independent basis for doubt as to his guilt.

All of the matters that have been urged by defendant as grounds for reversal go to the weight and credibility of the evidence rather than to its sufficiency to establish the defendant's guilt. The record in this case presented an issue of fact to be determined by the trial judge. We do not find that the evidence suggests a reasonable doubt as to defendant's guilt, and the judgment is therefore affirmed.

*Judgment affirmed.*