**People of the State of Illinois, Appellee, v. Edward
Asey (Impleaded), Appellant.**

Gen. No. 50,743.

First District, Third Division.

July 13, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Norman W. Fishman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. James Gildea, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Edward Asey, Donna Baker and Michael Parille were jointly indicted for armed robbery. Asey and Baker were tried at the same time but Asey was tried by a jury while Baker was tried by the court. Asey was found guilty and was sentenced to a term of 7 to 15 years in the penitentiary. This appeal is by him alone.

He contends: (1) improper evidence was admitted, (2) he was not proved guilty beyond a reasonable doubt, (3) the State's Attorney made improper comments before the jury, (4) the State's Attorney made an improper argument to the jury, (5) his counsel was incompetent, (6) he was prejudiced by his codefendant pleading guilty during the trial and (7) an instruction to the jury infringed upon his constitutional privilege to decline to take the witness stand.

Shortly before 11 a. m. on January 28, 1964, three armed men entered the office of a life insurance company at 4146 West Chicago Avenue in Chicago. The manager and his assistant were in the outer office. The robbers ordered the two men to put their heads down on a desk and they complied immediately and did not look up. While one of the robbers stayed there, the other two went into

213

the inner office where they confronted the cashier and several clerks. One of the two approached the cashier with gun in hand, told her to open the cash drawer, scooped up the money and took a bag containing checks ready for deposit. The robbers then left the office and were seen running through an adjoining parking lot.

Approximately 10 to 15 minutes later Police Officer Perri saw a woman, who was driving south on Cicero Avenue, go through a stop light at Madison Street. He followed in his squad car with the revolving light on top of the car turned on. At first he saw only the woman but when her vehicle reached Monroe Street he observed two men rise up, one in the front and one in the rear seat. The woman turned into Monroe Street, stopped the car and got out and the man in the front seat started to alight but Perri, who had just heard by radio of two robberies in his district, told him and the man in the rear seat to stay face forward in the auto and to keep their hands in full view. After talking briefly to the woman, Perri told the man in the front seat to get out with his hands in front of him. The man identified himself as Michael Parille, the owner of the vehicle. A police sergeant drove by and Perri, backing up and drawing his revolver, asked for his assistance. Perri ordered the man in the rear seat to get out, noticed something protruding under the side of his coat, touched it and felt a long object. The sergeant turned the man around and, his coat being open, saw the butt of a gun. The sergeant pulled the gun out and money in wrappers spilled to the ground. More money was found between the man's jacket and shirt and in his jacket pockets, and a bag containing a bundle of checks was taken from his belt. The man was afterwards identified as Asey.

The cashier and a clerk pointed out Parille in a lineup as one of the robbers but Asey was not identified by the cashier, the clerk or the office manager.

214

The defendant's first contention is that a photograph of Parille was improperly admitted in evidence. Parille, though indicted with Asey, was not tried with him. The clerk, the cashier and Officer Perri were shown Parille's photograph; the first two testified that he was one of the robbers and the latter testified he was with Asey in the automobile. The defendant contends that since he was not identified as a participant in the robbery, his guilt was established by the use of the photograph to prove Parille's participation in the crime and his association with Parille. He cites People v. Rezek, 4 Ill2d 164, 122 NE2d 272 (1954) in support of his contention. Rezek was indicted with three others for armed robbery but was granted a separate trial. Several witnesses to the robbery were able to identify the others but did not recognize Rezek. The State's Attorney had the others brought before the jury for the witnesses to identify. The court stated that this testimony was not relevant to Rezek's guilt and that it was calculated to prejudice the defendant in the eyes of the jury.

█ █ In the present case the defendant did not object to the State's Attorney showing the photograph to the witnesses nor to the admission of it into evidence; hence, his contention need not be considered on appeal. People v. French, 33 Ill2d 146, 210 NE2d 540 (1965). Moreover, the contention is without merit. Unlike the Rezek case, the identification of the codefendant (Parille) and proof of the defendant's association with him were relevant to the issue of the defendant's guilt: the photograph was used to prove that Parille was one of the robbers and was with the defendant within 10 to 15 minutes after the robbery and less than two miles from where it occurred. Since these facts support an inference that the defendant was associated with Parille in the commission of the offense, the admission of the photograph was proper. Cf. People v. Keagle, 7 Ill2d 408, 131 NE2d 74 (1955).

The defendant next argues that he was not proved guilty beyond a reasonable doubt. He stresses the facts that he was not identified as one of the three robbers, that about 15 minutes elapsed before Parille was apprehended and that Donna Baker, who was a woman and so could not have been one of the robbers, was with Parille and the defendant when they were caught.

██ A conviction can be sustained upon circumstantial evidence as well as upon direct evidence. People v. Russell, 17 Ill2d 328, 168 NE2d 309 (1959); People v. Huff, 29 Ill2d 315, 194 NE2d 230 (1963). The robber who stayed in the outer office could not be identified by the manager. He testified that ten seconds after the robbers entered his office he put his head down, he did not lift it while they were in the office and he did not see the man who pointed the gun at him well enough to describe him. The clerk had a side view of the third robber as he ran across the parking lot about 15 feet from her window; the cashier was about the same distance away and also had a side view. Neither witness was certain whether the third robber, whom they saw only in the parking lot, was the defendant. The testimony of these witnesses reasonably explained why they could not identify the robber who guarded the manager, and did establish that there was a third member of the gang. A short time after the robbery the defendant was found accompanying one of the robbers. They were in an automobile going away from the place of the robbery. They were hiding from view. The defendant had a gun in his belt; he also had in his possession checks and wrapped money stolen from the office and a bag like the one taken. From this evidence a natural and fair inference was that he took part in the robbery, that he was the one who stayed in the outer office. The jury did not err in concluding that the evidence was sufficient to establish his guilt beyond a reasonable doubt.

The defendant next complains of prejudicial comments by the prosecutor. The comments were made when the prosecutor identified one of the State's exhibits for the record. They were as follows:

"May the record indicate I am opening that envelope and withdrawing from it another envelope which has got Andrew J. Toman on the top. It has been crossed out. Underneath, contents of armed robbery—"

The defendant contends that he was prejudiced because the jury knew that Toman was the Coroner of Cook County and therefore was left to speculate that somehow a murder was involved in the case, especially since in his opening statement the State's Attorney said, "Mr. Parille . . . is no longer with us" and no further explanation of his absence was given. The defendant also contends that the reference to the contents of the envelope as "contents of armed robbery" was improper.

██ Three of the State's exhibits were contained in envelopes bearing the name of Andrew J. Toman and when the State's Attorney introduced them for identification he mentioned this fact. The defendant did not object the first and third times. Since he failed to do so on these occasions, it is apparent that the objection he made to the second exhibit was to the phrase "contents of armed robbery" and not to the mention of Toman's name. However, even if the objection be considered as also referring to the latter point, we do not see where he was prejudiced. The defendant was not accused of causing or contributing to anyone's death; none of his victims or confederates was said to be deceased, and Toman's name had been crossed out on the exhibits. No inference adverse to the defendant could be drawn by the jury. Moreover, as the prosecutor was explaining what was written on the envelope, an objection was made and the court said, "Strike that. Jury disregard it." The prompt ruling of

217

the trial judge removed whatever speculation might otherwise have arisen. The notation "contents of armed robbery" did not implicate the defendant in the robbery; it merely set forth the conclusion of an unspecified person that the exhibits were connected with an armed robbery. The evidence previously introduced fully supported that conclusion and no evidence later produced rebutted the fact that an armed robbery had taken place. the defendant was not prejudiced by these words.

██ The improper argument of the State's Attorney is said to be his reference to the defendant's failure to testify. During his argument to the jury the prosecutor remarked, "He doesn't explain anything about the property found on him; he never does later." The Code of Criminal Procedure forbids comment on a defendant's neglect to testify (Ill Rev Stats c 38, § 155-1 (1963)) and a judgment of conviction may be reversed if such a comment is made. People v. Cheney, 405 Ill 258, 90 NE2d 783 (1950). However, when the statement quoted above is put in its full context, it is seen to be only a reference to the four times Asey was questioned by the police. Officer Perri testified that when Asey came out of the auto he told him he was under arrest for robbery and that Asey remained silent. He further testified that he questioned Asey at the police station, asking where the checks and gun came from, and that he did not answer. A detective testified that he questioned Asey at the district station and at the police area headquarters, that he asked him if he participated in the robbery and about the money and the gun he had when arrested, that Asey denied participation and said, "What money? What gun?" In his final argument the State's Attorney recounted this evidence, discussed the use of circumstantial evidence and the defenses which could be made to rebut a case based on such evidence. The whole argument referred to the pretrial questioning and not the defendant's failure to testify. Moreover, since the defendant did not object to

218

the statement of which he now complains, the issue is deemed to be waived. People v. Donald, 29 Ill2d 283, 194 NE2d 227 (1963).

█ The fifth point is the alleged incompetency of defense counsel. In his oral argument in this court the defendant's attorney on appeal stated that his trial counsel did more than an adequate job of defending Asey except in one particular: he did not move to suppress the evidence found on his person at the time of his arrest. The failure to make a motion to suppress is no sign of incompetence, for under the evidence such a motion would have been futile.

█ Where there has been a lawful arrest, a policeman has a right to search the person arrested for weapons and for fruits of the crime. People v. Peak, 29 Ill 2d 343, 194 NE2d 322 (1963). An arrest without a warrant is lawful if a criminal offense has been committed and the arresting officer has a reasonable basis for his belief that the person to be arrested has committed it. People v. Catavdella, 31 Ill2d 382, 202 NE2d 1 (1964). The test of whether the officer had a reasonable basis is whether a reasonable and prudent man in possession of the knowledge which the officer had would believe the person arrested guilty of the offense. People v. LaBostrie, 14 Ill2d 617, 153 NE2d 570 (1958). And a factor to be considered in judging the reasonableness of the officer's conduct is his responsibility to prevent crime and to catch criminals. People v. Zeravich, 30 Ill2d 275, 195 NE 2d 612 (1964). Officer Perri saw Donna Baker, apparently alone, drive through a stop light. As he gave chase he saw two men who had been concealed from view raise their heads. He had just been apprised that two robberies had been committed. The car in which the men had been concealing themselves was not far from the site of the robbery, which had been committed about 10 to 15 minutes earlier. The arrest was lawful and these suspicious circumstances indicated to Perri, as they would

have to any cautious man, that he might be dealing with criminals, not an ordinary traffic violator, and gave him good reason to search the driver and passengers. Cf. People v. Thomas, 31 Ill2d 212, 201 NE2d 413 (1964). Furthermore, the gun was in plain view—no search was needed. Under the prevailing situation the officers were justified in seizing the weapon and searching Asey to insure their own safety and to prevent his escape.

 The sixth point asserted by the defendant is that he was prejudiced because his codefendant, Donna Baker, pleaded guilty during the trial. He contends that Baker should have been required to sit in the courtroom as a defendant until after the jury began its deliberation.

A review of the record demonstrates that no prejudice could have resulted from Baker's plea of guilty. Before the trial began the court fully explained that although both defendants would be tried at the same time, the jury would decide only Asey's guilt or innocence, not Baker's because she had waived a jury trial; that the jury would listen to the evidence pertaining to him and the court would listen to the evidence pertaining to her. In view of this explanation, the jury had little reason to concern itself with Baker's presence or absence. Before the State completed its case, and outside the presence of the jury, Baker pleaded guilty to the charge of concealing and aiding a fugitive. The State entered a plea of nolle prosequi to the armed robbery charge and Baker was taken away. The jury was recalled and the State continued the presentation of its evidence. Since the State had not yet introduced all the evidence it felt was necessary to sustain a conviction for armed robbery (the only offense charged against Baker of which the jury knew), the jury was more likely to conclude that the State had dismissed the indictment than that she had pleaded guilty to it.

The defendant's last point is that an instruction violated his right not to testify and to be free from comment on his not testifying. The court instructed the jury that:

". . . recent unexplained and exclusive possession of the proceeds of a robbery by an accused in and of itself gives rise to an inference of guilt which may be sufficient to sustain a conviction, in the absence of other evidence which leaves a reasonable doubt in the minds of the jury."

The defendant argues that since he was the person best able to explain his possession, the instruction was both a comment on his silence and an authorization to find him guilty because of his exercise of his right. He relies on Griffin v. California, 380 US 609 (1965), a case in which the United States Supreme Court held that instructions by a court that an accused's silence is evidence of guilt are constitutionally forbidden.

■■ ■■ The instruction in the case at bar informed the jury of a rule of law which is well-settled in Illinois, cf. People v. Wheeler, 5 Ill2d 474, 126 NE2d 228 (1955) and People v. DeFilippis, 34 Ill2d 129, 214 NE2d 897 (1966), and differed essentially from that condemned in Griffin. In Griffin the jury was told:

"As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable."

Here, the instruction neither directly nor covertly referred to the defendant's failure to testify. How he came to possess the proceeds of the robbery could be explained through the testimony of his own witnesses or cross-examination of the State's witnesses, as well as by his

221

own testimony, or could have been explained at the time of his arrest or during the course of his investigation. The instruction did not suggest that the inference of guilt would be rebutted only if an explanation were given by him personally from the witness stand. Indeed, the instruction made clear that even if his possession was unexplained, the inference of guilt was rebutted if other evidence left a reasonable doubt in the jury's mind. The instruction simply advised the jury that the State's evidence, if believed, would support a conviction despite the fact that the defendant was not identified as a participant in the robbery. It did not transgress his right to decline to testify.

The judgment of the Criminal Division of the Circuit Court is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.