283 So.2d 183

**Lester MOORE**

v.

**STATE.**

**8 Div. 290.**

Court of Criminal Appeals of Alabama.

March 20, 1973.

Rehearing Denied April 17, 1973.

Gullahorn & Hare, Albertville, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

TYSON, Judge.

The Grand Jury of Marshall County, Alabama, charged the appellant with cattle theft under Title 14, Section 346(2), Code of Alabama 1940 (1971 Cumulative Pocket Part). The Jury's verdict found the appellant guilty as charged, and judgment set sentence at three years imprisonment in the penitentiary.

The first witness for the State, James H. Templeton, testified that he and his brother, C. D. Templeton, jointly owned about eighty head of cattle. He stated that on the morning of February 4, 1972, he discovered that the chain on the gate to his barn had been "sawed in two and wired back, and that three cows and five calves were missing from his herd." He also observed the marks leading up to his loading chute. The prints were from one Goodyear tire and one Firestone tire on the left rear wheel drums. He also noticed that red paint had rubbed off on the chute, and stated that all of his trucks were either black or green.

He further testified that on the following Tuesday, he observed two of his missing calves on the rear of appellant's truck at Kennamer's Sale Barn in Guntersville. Appellant was accompanied by one Billy Ray Stone at the sale. Mr. Templeton stated that he bought one of the calves, a Charolais, that he had identified as one of his missing calves, and upon returning it to his pasture, it immediately found its mother and started nursing.

He testified that the next day Deputy Sheriff Jerry Mitchell accompanied him to the Larkinsville Sale Barn, where he found two more of his missing calves. He returned these two calves to his pasture, at which time they were immediately claimed by their mothers. Templeton stated that he later found the rest of his cattle in a meadow on Turnpike Road. He had also seen a truck with a cattle bed on a red frame, that had one Firestone and one Goodyear tire on the left rear wheel drums, parked in appellant's yard.

Deputy Sheriff Jerry Mitchell testified that he had accompanied Mr. Templeton to the cattle auction at Larkinsville, and that Templeton identified two calves in appellant's possession as belonging to him (Templeton).

Mitchell then placed appellant under arrest, and the three drove back to the Marshall County Jail.

Billy Ray Stone, the chief witness for the defense, testified that he alone had stolen the cattle from Templeton's barn, and that appellant had no knowledge of the theft. He stated that he had asked appellant to sell the cattle for him and that appellant did not know they were stolen until he was arrested.

On rebuttal, Mr. Templeton testified that from his experience one man could not load cattle from his chute.

I

The only question presented on appeal is the admissibility of an inculpatory statement made by appellant, while driving to the Marshall County Jail, in the presence of Deputy Mitchell and Mr. Templeton. The appellant contends that the statement was inadmissible because of a defective *Miranda* warning given by Deputy Mitchell upon placing appellant under arrest.

The trial court, after voir dire examination of Deputy Mitchell outside the presence of the jury, ruled that the statement was voluntarily made, and therefore admissible.

On direct examination in the presence of the jury, Deputy Mitchell testified as follows:

"A I told him that he had . . . After I arrested him, I told him he had the right to remain silent, that anything he said could and would be used against him in a court of law. I told him that he had . . . that he could . . . a lawyer . . : he had the right to have a lawyer present during questioning. If he could not afford a lawyer, one would be appointed to him at State expense, would not cost him anything, and that during questioning he had the right to stop at any time he wanted to stop, at any point he wanted to stop at any time.

"Q Did you at any time after his arrest and until you got back to Guntersville question Mr. Moore?

"A No, sir.

"Q Did some sort of a conversation take place between Mr. Moore and Mr. Templeton in the car going back to Guntersville?

"A Yes, sir. Mr. Templeton and Mr. Moore was discussing the calves and Mr. Templeton . . . .

"MR. GULLAHORN: I'm going to object, Your Honor . . .

"MR. WILKES (continued):

"Q Just a minute . . . What, if anything, did Mr. Moore say, after his rights were explained to him, about the two calves that you were bringing back from that sale barn in Jackson County?

"MR. GULLAHORN: For the sake of the record, I want to object on the ground that the defendant was not informed of part of his Miranda rights, to-wit: That an attorney would be furnished for him by the State prior to any questioning or prior to making any statement, if he so desired.

"THE COURT: Overruled.

"MR. GULLAHORN: Except.

"MR. WILKES (continued):

"Q What, if anything, did Mr. Moore, the defendant, say about those two calves that you all were bringing back from that sale barn in Jackson County to Mr. Templeton's place in Marshall County?

"MR. GULLAHORN: Your Honor, for the sake of the record, I've got to enter my objection again on the same ground as I objected to the last question.

"THE COURT: All right. You have your objection. Answer the question, please, Mr. Witness.

"WITNESS (continued):

"A   He said that the calf the day before that he had sold might have been stolen but the two calves at Larkinsville could not have been stolen because he had raised those two calves on the bucket."

Mitchell also testified that neither he nor Mr. Templeton had threatened, coerced, offered any reward, or hope of reward, or offered any inducement whatsoever to the appellant in order to obtain a statement.

Deputy Sheriff Edsel Whitten testified that upon arriving at the Sheriff's office, appellant was given his *Miranda* warning, which he signed, as set out in the form below:

| "Place | Sheriff Office |
| Date | Feb. 9, 1972 |
| Time | 3:45 P.M. |

"Before we ask you any questions, you must understand your rights. You have the right to remain silent.

"Anything you say can be used against you in court.

"You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

"If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

"If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

### "WAIVER OF RIGHTS

"I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

"Signed Lester Moore

"Witness:   Jerry V. Mitchell"

Whitten further testified that after signing the waiver, appellant stated that he had bought the calves from a sale in Arab, and that he attempted to produce a bill of sale, which he was unable to find. Appellant then stated to Deputy Whitten that he thought he had bought the calves in November or December or January. Deputy Whitten replied that the calves were not old enough, and appellant then stated he knew those calves were not stolen because he had raised them on the bucket.

Whitten then testified that the appellant made another statement the next day to the effect that he didn't steal those two calves, that he was covering up for Billy Stone. Whitten stated that no one had threatened, coerced, offered any reward or hope of reward, or offered any inducement whatsoever to the appellant in order to obtain the above statements.

The trial court had ruled that these statements were admissible on voir dire examination outside the presence of the jury.

Appellant contends that the *Miranda* warning given by Deputy Mitchell after placing appellant under arrest was defective in that appellant was advised that "he had a right to have a lawyer present during questioning," and was not advised that he had the right to have lawyer present prior to questioning.

Assuming that the *Miranda* warning given by Deputy Mitchell was defective under the authority of Square v. State, 283 Ala. 548, 219 So.2d 377, we are of the opinion that the inculpatory statement made by appellant to Mr. Templeton would nevertheless be admissible.

The Supreme Court of Alabama in Truex v. State, 282 Ala. 191, 210 So.2d 424, stated:

". . . We are constrained to agree with the Supreme Court of Nevada that the substance of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) have no application when confessions or admissions otherwise admissible are given to persons who are not officers of the law nor their agents. Schaumberg v. State, [83 Nev. 372], 432 P.2d 500 (1967)."

*Miranda* was concerned with the admissibility of statements stemming from custodial police interrogation. The Supreme Court defined custodial interrogation as follows:

". . . [W]e mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. . . ." Miranda v. State of Arizona, supra.

Here, there was no questioning initiated by law enforcement officers. Deputy Mitchell testified that the conversation was between Mr. Moore and Mr. Templeton, while he drove, and that at no time prior to arriving at the Sheriff's office did he attempt to question appellant. Nor do we believe that this was a situation where officers set up a conversation between a defendant and a third person in order to obtain an admission of guilt.

Mitchell further testified that neither he nor Mr. Templeton made any threats, promises, hope of reward, or other inducement to the appellant.

After a careful reading of the record, we are of the opinion that the statement made by appellent was not the product of any in-custody interrogation by law enforcement officers, but on the contrary was freely given to a third person without any participation whatsoever by an officer. Thus, the trial court was correct in admitting appellant's statement into evidence. Bedingfield v. State, 47 Ala.App. 677, 260 So.2d 408; Rutherford v. State, 48 Ala. App. 289, 264 So.2d 210, cert. den. 288 Ala. 750, 264 So.2d 214.

Having found no error after a careful search of the record as required by Title 15, Section 389, Code of Alabama 1940, the judgment is due to be and the same is hereby

Affirmed.

ALMON, HARRIS, and DeCARLO, JJ., concur.

CATES, P. J., concurs in result.