THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DUANE E. GRIFFITH, Defendant-Appellant.

Second District    No. 76-285

Opinion filed January 17, 1978.

748

Walsh & Neville, of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Malcolm Smith, Assistant State's Attorney, and Phyllis J. Perko and Stephen M. Dietsch, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

After trial by jury defendant, Duane E. Griffith, was found guilty of reckless homicide and sentenced to a three-year term of probation. He appeals, contending that: (1) he was not proved guilty beyond a reasonable doubt; (2) his oral statement to police was erroneously admitted in evidence; (3) the trial court improperly commented on defendant's failure to testify; (4) prejudicial medical testimony was allowed relating to the cause of the victim's death; (5) the State failed to furnish a mechanic's report in response to a discovery order; and (6) testimony as to defendant's reputation for truth and veracity was erroneously not allowed in evidence.

On September 5, 1975, at about 6:45 p.m. defendant, 17 years old, was driving his Pontiac GTO automobile in a westerly direction on Cayuga Street in Elmhurst, Illinois. His younger sister accompanied him and they were going to pick up their father and then go to a family dinner. Cayuga is a narrow, residential street with which defendant was familiar as he had lived in the area and had often driven on it before. There was a posted speed limit of 25 miles per hour approximately one block west of the scene of the accident on Cayuga Street directed towards traffic approaching the place of the accident from the west. It is apparent that if any other speed limit control existed at the scene of the accident it would be for 30 miles per hour by virtue of the residential character of the area.

Immediately before defendant reached the place of the accident on Cayuga Street there is a sharp, left-ward curve in the street and, as he rounded it, he lost control of his automobile which went into a partial skid and struck the northerly curb of the street. The car passed over the curb, broke off a small tree and progressed further over the parkway and driveways of nearby homes striking and killing Robert Samuels, aged 5

years, who was on his tricycle in the driveway of his home. Investigating officers testified there were approximately 147 feet of tire skid and scuff marks extending from the point of impact with the child back to the east towards the curve across the driveways, parkway and street. Defendant's driving was observed by witnesses as he approached and attempted to negotiate the curve in the street and they testified that his speed was 45 to 50 miles per hour, that the car tires screeched on the curve and that its engine made a loudly pitched, motorized sound.

Defendant was taken to the police station where he was advised of certain *Miranda* rights and then stated to the officer that he had been angry because his sister had insisted upon changing clothes before leaving home causing them to be late for the meeting with their father and that was why he had been driving fast on Cayuga Street. He said that he felt a thump on the bottom of the car as it approached the jog in the street, lost control of it going into a sideway skid and that, while he saw the child and locked his brakes, he could not avoid hitting him. He also stated he believed he had gone through water in the street and lost traction with wet tires. Investigating officers testified they examined the street and found no bumps or chuckholes at that place which could have caused a thump when passed over by an automobile and that the only patches of water on the street were along the curb half a block east of the curve.

A minister, who was acquainted with defendant's family, testified that defendant's reputation in the community for having careful and prudent driving habits was good and a real estate salesman, who was a neighbor of defendant's, testified in rebuttal that his reputation was that of being a fast, teenage driver.

## I

Defendant contends first that he was not proved guilty of reckless homicide beyond a reasonable doubt, arguing there is no evidence that he drove his car in a reckless manner likely to cause death or great bodily harm.

■■ A person who kills an individual without lawful justification commits involuntary manslaughter if his acts, whether lawful or unlawful, which cause the death are such as are likely to cause death or great bodily harm and he performs them recklessly. If the acts causing the death consist of the driving of a motor vehicle, he may be prosecuted for reckless homicide. (Ill. Rev. Stat. 1973, ch. 38, pars. 9—3(a), 9—3(b).) A person acts recklessly in this regard when he consciously disregards a substantial and unjustifiable risk that his acts are such as are likely to cause death or great bodily harm to some individual and where such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in such situation. (Ill. Rev. Stat. 1973,

ch. 38, pars. 4—6, 9—3(a).) Defendant agrees the State proved he was speeding, but argues that no other circumstances are established by the evidence to substantiate recklessness and that speeding alone is insufficient to sustain his conviction, citing *People v. Potter* (1955), 5 Ill. 2d 365, 125 N.E.2d 510, *People v. Lynn* (1943), 385 Ill. 165, 52 N.E.2d 166, and *People v. Rowe* (1972), 9 Ill. App. 3d 460, 292 N.E.2d 432.

■■ Defendant was familiar with the street and its residential character. He was aware of the speed limit and the sharp curve. Yet one witness described his car as going "at least 50 miles per hour and never slowing down for the curve until it went over the curb and struck the child." We believe that defendant's conduct as he approached and attempted to negotiate the sharp curve in the narrow residential street at that speed demonstrates circumstances indicating his conscious disregard of a substantial risk likely to cause death or great bodily harm and supports the finding of recklessness made by the jury. Certainly his conduct evidences a gross deviation from the care a reasonable person would exercise in such circumstances. See *People v. Prendergast* (1968), 95 Ill. App. 2d 41, 238 N.E.2d 92; *People v. Clark* (1970), 130 Ill. App. 2d 558, 562-63, 265 N.E.2d 191, 194-95, *rev'd on other grounds* (1972), 50 Ill. 2d 292, 278 N.E.2d 782; *People v. Baier* (1964), 54 Ill. App. 2d 74, 203 N.E.2d 633; *People v. Dietschweiler* (1974), 21 Ill. App. 3d 707, 713, 315 N.E.2d 585, 590.

Defendant called witnesses who testified that the steering mechanisms of the car were worn and would cause play in the steering wheel and a loose and wobbly feel to the automobile which could prevent control of it in some situations. One witness stated it was necessary to turn the steering wheel four to six inches before there was any wheel response. Others testified the car had a strong positraction and, under acceleration on making a turn, the vehicle could become uncontrollable. There were other witnesses called by the State who testified that, to the contrary, they had examined the car and test driven it after the accident and found the steering mechanism to be in satisfactory condition and that the car handled normally without difficulty with the steering, brakes or acceleration.

Defendant's theory that defects in his car, rather than reckless conduct on his part, caused him to lose control and strike the child was presented to the jury for its consideration and was rejected. The jury may have determined from the conflicting evidence that the car was in a satisfactory condition, or, it may also have determined that defendant's operation of the vehicle in the dangerous and defective condition described by some of his witnesses was simply further evidence of his recklessness in rounding the curve at high speed. In these circumstances we cannot say the jury was unjustified in arriving at its finding of recklessness and

defendant's guilt of the offense charged beyond a reasonable doubt. See *People v. Salazar* (1976), 37 Ill. App. 3d 800, 807, 347 N.E.2d 86, 92.


## II

■■ Defendant next contends the trial court erred in admitting evidence of his oral statement to a police officer, arguing he had not been advised of his right to have counsel present during questioning as required by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. Defendant has waived this claim of error by his failure to move to suppress the statement prior to trial as required by section 114—11 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 114—11), although defendant and his retained counsel knew, or should have known, of the claimed error now urged on appeal. Secondly, defendant did not raise this claim during trial where he made only a general objection to the "foundation" for the admission of the statement in evidence. Nor did defendant preserve any error in this regard by specifying it in his written motion for a new trial as is required by section 116—1(c) of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1973, ch. 38, par. 116—1(c).) There he made only a general allegation that the trial court erred in permitting testimony relating to a statement made by defendant without the presence of counsel. Defendant raises this contention of error for the first time on appeal and has never presented it to the trial court for its prior consideration as he is required to do. *People v. Terrell* (1975), 62 Ill. 2d 60, 338 N.E.2d 383; *People v. Irwin* (1965), 32 Ill. 2d 441, 207 N.E.2d 76; *People v. Rogers* (1975), 32 Ill. App. 3d 788, 336 N.E.2d 784.

■■ We have considered this claim of error to the extent necessary to determine that Supreme Court Rule 615(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 615(a)) need not be invoked. (*People v. Schoo* (2d Dist. 1977), 55 Ill. App. 3d 163, 371 N.E.2d 86.) Before questioning, defendant was advised he was not required to answer any questions and if he chose to do so he could have counsel; that any information he supplied would be used against him in a court of law; that if he could not afford to have counsel present, counsel would be provided for him; and that he could terminate any conversation at any time. Defendant said that he understood those rights. In this circumstance we find defendant's present claim of error to have been waived by him and will not consider it further. *People v. Goble* (1976), 41 Ill. App. 3d 491, 354 N.E.2d 108; see also *People v. Bunting* (1974), 18 Ill. App. 3d 99, 309 N.E.2d 316; *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731; *Moore v. State* (1973), 51 Ala. App. 110, 283 So. 2d 183.

## III

■■■ It is next contended that a remark by the trial judge was an improper comment on defendant's right not to testify. Defendant's counsel was examining a witness called by him when he inquired of the witness if he knew defendant's reputation for truth and veracity. The State objected (defendant had not previously testified in the case) and, before ruling on the objection, the trial judge inquired of counsel, "[i]s the defendant going to testify?" within the hearing of the jurors. In chambers, the trial court heard defendant's objection to the inquiry and asked if defendant wanted a mistrial; defendant's counsel stated to the court that he did not want a mistrial, but he now requests that we grant him the new trial which he rejected below.

It is apparent the trial court's inquiry was made only to help determine what ruling to make on the objection before it (which was ultimately sustained). If defendant chose not to testify during the trial, then he would not be entitled to present evidence of his reputation for truthfulness to the jury. While the trial judge should have made his inquiry outside the hearing of the jury, defendant's counsel brought on this issue by seeking to elicit testimony from the witness defendant was not then entitled to present. We believe the test to be applied here is the same as that stated in *People v. Mills* (1968), 40 Ill. 2d 4, 8, 237 N.E.2d 697, 700, where, in considering whether a prosecutor's closing argument constituted a reference to a defendant's failure to testify, the Illinois Supreme Court held the appropriate test to be whether or not the reference was calculated to direct the jury's attention to defendant's neglect to avail himself of his right to testify. (*People v. Blissitt* (1973), 12 Ill. App. 3d 551, 554-55, 299 N.E.2d 562, 564; *State v. Fontaine* (1974), 113 R.I. 557, 323 A.2d 571; see *Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229.) Clearly that was neither the intention of the court nor could the jury reasonably infer that was the purpose of the court's inquiry. In addition, in declining the court's offer to declare a mistrial, the defendant made a considered decision to waive any claim of error on these grounds and will be required to abide by his choice. (See *People v. Etten* (1975), 29 Ill. App. 3d 842, 845, 331 N.E.2d 270, 273, *cert. denied* (1976), 425 U.S. 994, 48 L. Ed. 2d 818, 96 S. Ct. 2207; *People v. Asey* (1967), 85 Ill. App. 2d 210, 218-19, 229 N.E.2d 368, 372.) That may also be one of the reasons why defendant failed to include this issue as a claim of error for the consideration of the trial court in his post-trial motion for a new trial. Finally, we note the court instructed the jury that "[t]he fact that the defendant did not testify should not be considered by you in any way in arriving at your verdict." (Illinois Pattern Jury Instructions, Criminal, No. 2.04 (1968).) We are satisfied that the

necessary inquiry made by the trial court in order to correctly pass on the objection before it was not prejudicial to defendant nor does it require a new trial.

## IV

■■  Defendant next contends prejudicial error occurred by reason of the introduction of medical testimony of the injuries sustained and treatment accorded to the injured boy. He argues that such evidence excited the passions and prejudices of the jury because of the pathetic condition of the young child. Defendant states that the only disputed question in the trial was whether he was reckless and, as the injuries to the child could not aid the jury in that determination, the admission of such testimony was error, relying upon *People v. Nickolopoulos* (1962), 25 Ill. 2d 451, 185 N.E.2d 209, and *People v. Sustak* (1958), 15 Ill. 2d 115, 153 N.E.2d 849.

Three doctors testified in trial. The first called was a neighbor of the child who treated him at the scene and accompanied him to the hospital in the ambulance. The other two doctors assisted in emergency room treatment. All three related to the jury the treatment given to the boy by themselves and hospital personnel in an effort to maintain his life and they each expressed an opinion that his death was a result of massive brain injury described by the evidence as having been sustained by the child when struck by defendant's car. The direct examination of these witnesses by the State was done without undue emphasis of the more gruesome aspects of the child's injuries, but defendant's cross-examination brought out in great detail the particulars of the injuries and the treatment given (with counsel's suggestions that the treatment was given negligently). Defendant examined these witnesses at length in an effort to establish that death resulted from medical negligence rather than from defendant's conduct. That effort by defendant was to no avail as it is clear from the evidence that the injuries sustained by the child when struck by the defendant's car would, inevitably, result in his death.

The cause of the child's death was a necessary element of proof in the case and evidence which could be considered inflammatory will not be withheld if relevant and necessary to an issue in a case. (See *People v. Roy* (1971), 49 Ill. 2d 113, 117, 273 N.E.2d 363, 365.) Defendant's efforts to create an impression that the boy died as a result of medical negligence made it necessary for the State to pursue that issue further than it might otherwise have done in this case. We note that defendant pursued his cause of death defense into his arguments to the jury where he contended that doctors do make mistakes and that the medical practice shown in this case was not competently done, suggesting that the defendant's conduct was not the sole cause of the boy's death. We note, too, that objections

were not interposed by the defendant to the direct testimony of the medical witnesses until they had substantially stated their respective observations and described the treatment given to the child. Then, in the case of the first medical witness called by the State, defense counsel sought a mistrial because of the alleged inflammatory and prejudicial testimony to which he had not previously objected.

■■ Defendant cannot claim he was prejudiced in this case for the reason that the substance of the matters to which he now objects were in fact brought out in most detail and were most emphasized by his own examination of the witnesses in an effort to establish the defense we have described. He cannot now properly seek reversal for conduct in which he has equally indulged. (See *People v. Nard* (1975), 32 Ill. App. 3d 634, 638, 335 N.E.2d 790, 793.) We are not persuaded that the testimony referred to in any improper way prejudiced defendant or that its admission requires a new trial.

## V

■■ The defendant next contends he was prejudiced by the failure of the State to furnish a copy of a report made by a witness who had examined defendant's car and who testified to its condition when called by the State in rebuttal. A discovery order had been entered prior to trial requiring the State to produce the reports of any expert witnesses and the hand-written report of Larry Kulaga, a mechanic, of his findings after examining defendant's car was not furnished. When Mr. Kulaga testified he tended to contradict defendant's expert witnesses who had found some defects in the car. The report was furnished to defendant's counsel during his cross-examination of the witness and used by him then.

The disputed report should have been disclosed to defendant by the State prior to trial pursuant to his request made under Supreme Court Rule 412(a)(iv) (Ill. Rev. Stat. 1973, ch. 110A, par. 412(a)(iv)) but was apparently overlooked by the State when it otherwise complied with the disclosure order. The trial judge denied defendant's request for a mistrial or that Kulaga's testimony be stricken finding the report was cumulative of other testimony relating to the condition of the car and that failure to provide it earlier did not prejudice defendant.

We note that the name of this witness was included in the list of witnesses furnished to defendant by the State prior to trial. In addition, the defendant was furnished before trial with an officer's report which summarized the mechanic's report thus obviating surprise to the defendant of its nature. While the State should have furnished this report as it was required to do under the rules we see no indication that the defendant was actually prejudiced by its failure to do so. (See *People v. Clinton* (1976), 43 Ill. App. 3d 62, 356 N.E.2d 1119.) The failure to disclose

material such as this by a party, whether purposely or carelessly done, is to be avoided. The rules provide for far-reaching sanctions which may be applied by the trial court as the circumstances of the matter before it and the interests of justice may require. (Ill. Rev. Stat. 1973, ch. 110A, par. 415(g)(i).) We do not believe the trial court abused its discretion in this case by denying defendant's motion for a mistrial or that the witness' testimony be stricken.

## VI

■■ Finally, defendant contends the trial court erroneously excluded testimony offered to show his reputation for truth and veracity. While defendant did not testify in his own behalf, he argues that his credibility was placed in issue when the officer who testified as to his statement that he had felt a thump on the bottom of his car and believed also that he had lost traction because of wet tires, also testified that he, the officer, had examined the street finding no bumps or nearby water. Defendant asserts he was thus impeached and should be permitted to present evidence favorable to his truth and veracity. We do not agree.

Had defendant chose to testify in his own behalf he would by so doing have tendered his character and reputation for truth and veracity as a direct issue in the case and his credibility would have been subject to the same tests as any other witness. (*People v. Miller* (1958), 13 Ill. 2d 84, 108, 148 N.E.2d 455, 468, *cert. denied* (1958), 357 U.S. 943, 2 L. Ed. 2d 1556, 78 S. Ct. 1394; *People v. Appleton* (1971), 1 Ill. App. 3d 9, 12, 272 N.E.2d 397, 399; *People v. Hicks* (1935), 362 Ill. 238, 243, 199 N.E. 368, 370.) In that event, the State would have been permitted to impeach him by evidence of a bad reputation for truthfulness and defendant thereafter would have been entitled to support his character with contrary reputation evidence. It is proper to impeach any witness, including a defendant in a criminal case, by evidence his reputation for truth and veracity is bad (*People v. Bakutis* (1941), 377 Ill. 386, 390, 36 N.E.2d 724, 726), but evidence of a witness' good reputation for truth and veracity cannot be admitted in the first instance until his reputation has first been attacked as being bad. See *Tedens v. Schumers* (1884), 112 Ill. 263, 266; *People v. Thomas* (1960), 18 Ill. 2d 439, 444, 164 N.E.2d 36, 39.

■■ Evidence of a defendant's reputation for truth and veracity is also admissible in a criminal proceeding if it relates to some issue involved in the crime charged. (See *People v. Kendall* (1934), 357 Ill. 448, 456-57, 192 N.E. 378, 382; *People v. Weathers* (1974), 23 Ill. App. 3d 907, 911, 320 N.E.2d 442, *rev'd on other grounds* (1975), 62 Ill. 2d 114, 338 N.E.2d 880.) In a prosecution for reckless homicide, however, defendant's reputation for truth and veracity has no bearing on any trait of character involved in that offense and is not admissible on this basis. (See *People v. Jinkins*

(1967), 82 Ill. App. 2d 150, 225 N.E.2d 657; *Weathers; Kendall.*) It is only by these means that such evidence is admissible and the trial court correctly rejected the reputation testimony tendered by defendant in this case.

For these reasons the judgment of the Circuit Court of Du Page County is affirmed.

Affirmed.

BOYLE and GUILD, JJ., concur.