(No. 48704.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DERRICK JACKSON, Appellant.

*Opinion filed November 30, 1977.*

James D. Montgomery, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Jayne A. Carr, Assistant Attorney General, of Chicago, and Laurence J. Bolon, and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE DOOLEY delivered the opinion of the court:

Defendant, Derrick Jackson, was tried by a jury in Cook County on a charge of armed robbery, found guilty, and sentenced to imprisonment for a term of four years to four years and one day.

The circuit court held unconstitutional a 1975 amendment to section 115—4(f) of the Code of Criminal Procedure of 1963 relating to the *voir dire* examination of prospective jurors (Ill. Rev. Stat. 1975, ch. 38, par. 115—4(f)). This gave defendant a direct appeal under Rule

302(a) of this court. 58 Ill. 2d R. 302(a).

Section 115—4(f) now reads:

> "After examination by the court the jurors shall be examined, passed upon, accepted and tendered as a panel of 4 commencing with the State. Each opposing counsel has the right to conduct his own voir dire of each prospective juror for the purpose of determining such juror's qualifications, bias and prejudice, or freedom therefrom." Ill. Rev. Stat. 1975, ch. 38, par. 115—4(f).

Rule 234 of this court (58 Ill. 2d R. 234) also deals with *voir dire*. It provides:

> "The court shall conduct the voir dire examination of prospective jurors by putting to them questions it thinks appropriate touching their qualifications to serve as jurors in the case on trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate, or may permit the parties to supplement the examination by such direct inquiry as the court deems proper. Questions shall not directly or indirectly concern matters of law or instructions."

Rule 234 is made applicable to criminal trials by Rule 431 (58 Ill. 2d R. 431).

Defendant asserts that the trial court erred in refusing to follow the procedure prescribed by section 115—4(f) since the statute was a proper exercise of a legislative function and superseded Rule 234. The State contends that the statute is invalid since it encroaches upon the rule-making power of this court, which, it urges, is a judicial function.

The question is whether Supreme Court Rule 234 or the statute (Ill. Rev. Stat. 1975, ch. 38, par. 115—4(f)) regulates the method of *voir dire* examination of prospective jurors. This issue resolves itself to whether control of *voir dire* examination is a judicial or legislative function. The controversy thus involves separation of powers between the legislative and judicial branches.

The Illinois Constitution of 1970 provides for a

separation of the legislative, executive and judicial branches, and prohibits any branch from exercising powers "properly belonging to another." Ill. Const. 1970, art. II, sec. 1.

The judicial power is vested in a supreme court, appellate courts and circuit courts (Ill. Const. 1970, art. VI, sec. 1), and the general administrative and supervisory authority over all courts "is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules" (Ill. Const. 1970, art. VI, sec. 16). The term "supervisory" was employed to fortify the concept of a centrally supervised court system. Ill. Ann. Stat., Const. of 1970, art. VI, sec. 16, Constitutional Commentary, at 527-28 (Smith-Hurd 1971).

This court may provide by rule for direct appeals from the circuit court to this court (Ill. Const. 1970, art. VI, sec. 4(b)); by rule for appeals from the appellate court (Ill. Const. 1970, art. VI, sec. 4(c)); by rule for interlocutory appeals (Ill. Const. 1970, art. VI, sec. 6); and by rule "for expeditious and inexpensive appeals" (Ill. Const. 1970, art. VI, sec. 16).

Although the Constitution of 1970 does not define judicial power, it is an exclusive grant of all such power to the courts. (*Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149; *People v. Callopy* (1934), 358 Ill. 11, 14; *People v. Bruner* (1931), 343 Ill. 146, 157.) If the power is judicial in character, the legislature is expressly prohibited from exercising it. *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149; *People v. Bruner* (1931), 343 Ill. 146, 157.

This proposition has been repeated on multiple occasions prior to the Constitution of 1970, which conferred responsibility for the administrative and supervisory power "over all courts" in the supreme court (Ill. Const. 1970, art. VI, sec. 16). *People v. Lobb* (1959), 17 Ill. 2d 287, 299; *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149; *People v. Callopy* (1934), 358 Ill. 11, 14.

While the Constitution of 1870 was without a specific provision for the rule-making power of the supreme court, it provided that all judicial power in the State was placed in the supreme court and other courts. (Ill. Const. 1870, art. VI, sec. 1.) This embraced everything necessary to the full performance of the judicial functions. *People v. Spegal* (1955), 5 Ill. 2d 211, 219.

Dean Pound traced the rule-making power to the common law courts of the Middle Ages. Historically, this power belonged to the judiciary.

> "In truth procedure of courts is something that belongs to the courts rather than to the legislature, whether we look at the subject analytically or historically. *** Historically the matter is even more clear. For the common-law courts have governed procedure by general rules from the middle ages to the present, and the first public action of the Supreme Court of the United States was to make a rule adopting the practice of the Court of King's bench as the practice of that tribunal.
>
> \* \* \*
>
> When American constitutions were adopted, the power to make general rules governing procedure was and had been for centuries in the King's courts at Westminster. ***
>
> Hence, if anything was received from England as a part of our institutions, it was that the making of these general rules of practice was a judicial function." Pound, *The Rule-Making Power of the Courts,* 12 A.B.A.J. 599, 601 (1926).

See also Joiner and Miller, *Rules of Practice and Procedure: A Study of Judicial Rule Making,* 55 Mich. L. Rev. 623, 624 (1957); Note, *People ex rel. Stamos v. Jones: A Restraint on Legislative Revision of the Illinois Supreme Court Rules,* 6 J. Mar. J. Prac. & Proc. 382 (1973).

In deciding this question, we are not without meaningful guideposts. (*People v. Lobb* (1959), 17 Ill. 2d 287; *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145; *People v. Callopy* (1934), 358 Ill. 11.) The stature of those

authorities is magnified by the fact that they were decided prior to the grant of supervisory and administrative power over all courts in the Constitution of 1970 (Ill. Const. 1970, art. VI, sec. 16).

*People v. Callopy* (1934), 358 Ill. 11, presented the issue of the validity of a rule of this court (355 Ill. R. 27) that instructions to juries in criminal cases be in accord with section 67 of the Civil Practice Act (Ill. Rev. Stat. 1933, ch. 110, par. 67), absent statutory enactment on the question. This court had authority to make rules governing the judicial function, at least where the legislature had not acted. In concluding that the judicial system had the power to regulate rules of procedure, the history of the institutions prior to and at the time of the adoption of the Constitution of the United States, as well as the common law as it then existed in this country, were considered.

*Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, posed the issue of the validity of a statute prohibiting *ex parte* action to dismiss a case for want of prosecution until every attorney of record had been notified by the clerk of the court at least five days prior to the entry of such an order. This was struck down as an unconstitutional encroachment by the legislative upon the judicial branch.

In *People v. Lobb* (1959), 17 Ill. 2d 287, the constitutionality of former Supreme Court Rule 24—1 (13 Ill. 2d R. 24—1) was an issue. Under the terms of that rule the judge initiated the *voir dire* examinations and put to prospective jurors questions he thought relevant to their qualifications to serve as jurors. The parties were afforded a reasonable opportunity to supplement the examination. (Current Rule 234, while also providing for trial court initiation of inquiry, no longer gives the parties the right to ask questions directly.) There it was determined that the right to trial by jury was not so inelastic as to render unchangeable "every characteristic" of the common law jury system. This court had powers to regulate the trial of

cases, and its rules had the effect of law. *Harris v. Annunzio* (1952), 411 Ill. 124, 127.

*People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, provided an instance of a distinct conflict between the rules of this court and a statute on the same subject. The rule (36 Ill. 2d R. 609(b)) was to the effect that upon appeal from a judgment sentencing defendant to imprisonment, "the defendant may be admitted to bail and the sentence *** stayed by a judge of the trial or reviewing court." But the statute provided that if the appeal was from a judgment or order on an offense defined as a "forcible felony," the defendant was not entitled to a continuance of his bail and there could be no stay of a sentence of imprisonment by the trial court (Ill. Rev. Stat. 1967, ch. 38, par. 121—6(b)).

The conclusion in *People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, was that the judicial article of 1964 (Ill. Const. 1870, art. VI (1964), sec. 5) placed exclusive responsibility for rules governing appeals in the supreme court. Hence, the General Assembly had exceeded its authority in enacting such a law.

As we have already noted, the Constitution of 1970 vests "[g]eneral administrative and supervisory authority *** in the Supreme Court" (art. VI, sec. 16). Under the Constitution of 1970 (art. VI, sec. 17), the supreme court shall provide for an annual judicial conference to, amongst other things, suggest improvements in the administration of justice. The background of Rule 234 may be found in the work of the judicial conference. (See *Report of the Study Committee on Jury Selection and Utilization,* 1974 Report of the Illinois Judicial Conference 132.) This, of course, makes clear that Rule 234 was a product of this court's supervisory and administrative responsibility, another reason the legislature was without authority to determine how a *voir dire* examination of prospective jurors shall be conducted.

Of course, if there were a constitutional right for the parties, through their counsel, to interrogate prospective jurors on their *voir dire* examination, then Supreme Court Rule 234 would be unconstitutional. (See *People v. Lobb* (1959), 17 Ill. 2d 287, 299; *Diversey Liquidating Corp. v. Neunkirchen* (1939), 370 Ill. 523, 526.) However, the basic constitutional right is trial by an impartial jury. That is all to which any litigant is entitled. (*Brown v. New Jersey* (1899), 175 U.S. 172, 175, 44 L. Ed. 119, 121, 20 S. Ct. 77, 78.) Such a right does not require that the parties themselves be permitted to interrogate the jurors. (*People v. Lobb* (1959), 17 Ill. 2d 287, 301; *Falter v. United States* (2d Cir. 1928), 23 F.2d 420, 426; see *United States v. Anderson* (8th Cir. 1970), 433 F.2d 856, 858, and *United States v. Duke* (4th Cir. 1969), 409 F.2d 669, 671.) Examination of prospective jurors by court or by counsel is not a part of the right to trial by jury but, rather, a matter of trial detail which courts can regulate in the exercise of judicial discretion. See *People v. Lobb* (1959), 17 Ill. 2d 287, 300, and *Connors v. United States* (1895), 158 U.S. 408, 413, 39 L. Ed. 1033, 1035, 15 S. Ct. 951, 953, where the court observed "[t]hat inquiry is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion. This is the rule in civil cases, and the same rule must be applied in criminal cases."

We conclude that the statute in question is a legislative infringement upon the powers of the judiciary. Accordingly, it is void.

Defendant also objects that the trial court unduly limited his counsel's cross-examination of one of the two victims of the robbery. The circumstances of the robbery are undisputed. It took place in an alley on the north side of Chicago in the early morning hours of December 21, 1974. The two victims, Michael McCoy and Patricia Guthrich, were returning to McCoy's car after visiting

friends in the neighborhood. They were set upon and robbed by defendant, who was armed with a gun, and two other men. Following the robbery defendant and his companions ran toward a station wagon. McCoy pursued them for the purpose of being able to ascertain the make, model, and license number of the getaway car.

A day or two later the police, notified by McCoy of the robbery and of the appearance of the car, observed a vehicle answering to the description in the course of a traffic violation. The officers stopped the vehicle and arrested the occupants.

McCoy and Guthrich then went to the police station, where defendant and his accomplices were in custody. They identified the defendant as well as the vehicle employed in the robbery. The defense at the trial consisted chiefly of attacks upon the reliability of the identification testimony. This, of course, was an issue of fact for the jury. *People v. Johnson* (1970), 45 Ill. 2d 38, 46; *People v. Potts* (1968), 40 Ill. 2d 376, 377.

The State's witnesses had an ample opportunity to observe defendant at the time of the robbery. He was only a few feet away. Their station-house and in-court identification testimony was positive.

We have reviewed the testimony and we are satisfied that defendant was deprived of no right to ask questions which were relevant and nonrepetitious.

The judgment of the circuit court is accordingly affirmed.

*Judgment affirmed.*