THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS GEORGE, Defendant-Appellant.

Second District   No. 77-113

Opinion filed October 30, 1978.—Rehearing denied November 30, 1978.

Robert P. Sheridan and M. J. Berkos, both of Chicago, for appellant.

Michael Fitzsimmons, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

Defendant, Dennis George, was convicted of solicitation to commit murder (Ill. Rev. Stat. 1973, ch. 38, par. 8—1) after trial by jury and was sentenced to five years probation, the first six months to be served in the Du Page County jail. He appeals, contending: (1) the indictment was invalid; (2) the trial court erred in denying his motion to suppress tape recordings of conversations between himself and a witness; (3) prejudicial error in the admission and exclusion of evidence and improper argument by the State requires a new trial; and (4) the evidence was insufficient to establish his guilt beyond a reasonable doubt.

Defendant, a 19-year-old college student who was active in political organizations in Du Page County, was charged with soliciting one Michael Dunaway to "arrange for" the murder of Cindy Runge, the girlfriend of defendant's friend and political ally, Greg Thoele. The defendant had met Dunaway in the spring of 1975 when Dunaway suggested to defendant he could be useful to defendant's future political career by protecting him and by providing him with damaging information about his political adversaries. This offered assistance was apparently rejected by defendant but he and Dunaway remained in occasional contact. They had a disagreement in April or May of 1975 at which time Dunaway allegedly threatened to get even with defendant. In September of 1975 Dunaway approached the Elmhurst police and told them he had been requested by defendant to murder Cindy Runge and offered his assistance in securing evidence of that solicitation for the officers. The officers then obtained permission from a Du Page County Assistant State's Attorney to record a meeting planned for September 12 between Dunaway and the defendant; Dunaway was outfitted with a concealed transmitter and the police recorded a conversation between these men in defendant's home on that day. On September 19 a second conversation was transmitted and recorded by the officers in the same way, again after authorization by an Assistant State's Attorney. On that same day officers observed defendant and Dunaway leave defendant's home and travel to a store where defendant cashed a check and gave money to Dunaway. He had been searched prior to this meeting and

returned to the officers with funds which he testified in trial were given to him by defendant as a downpayment for the murder.

The taped recordings of these two conversations, which were played for the jury during the presentation of the State's case and again at the jury's request during its deliberations, together with Dunaway's testimony relating to the same matters, constituted essentially all of the inculpatory evidence presented against defendant. In the conversation recorded on September 12, Dunaway told defendant he had arranged for Cindy Runge to be "bumped like you wanted" and defendant asked what it would cost, who would do it and how he would be protected from being implicated. Dunaway told him the "hit" would take place in two weeks and that the victim would be shot. Defendant then asked Dunaway when he wanted the $500 and Dunaway said he wanted it the day after the hit. On September 19, during the second taped conversation, Dunaway asked defendant why he had called after three months and asked him to arrange a hit and defendant replied that Dunaway was the only person he knew who would do that type of thing. Dunaway then told defendant he needed a picture of the victim and $50 as a "show of faith" for the people who were actually going to do the job and defendant mentioned he was concerned about how it would be done and did not want Greg Thoele with the victim when it happened. When asked by Dunaway why he wanted this done defendant said, "[t]here is no other way to keep him active in politics. * * * I worked it out in my mind and there is no other way." When Dunaway remarked to defendant it was strange he had called to ask him to "do a hit" when they hadn't seen each other in three months, the defendant replied: "Didn't I say I'd call you this way one day[?]"

In trial defendant testified that Dunaway had in fact called and told him that Dunaway was going to kill either Thoele or his girlfriend in order to prove his loyalty to defendant. He testified he only went along with Dunaway in their conversations in order to determine whether or not he was serious, that he never intended that Cindy Runge be killed and that the money he gave Dunaway was actually for a loan. He further testified that he did not believe Dunaway had the underworld connections he claimed and that shortly after the first taped conversation he had told a friend, Gordon Schiavone, about it and had told him he thought Dunaway was not serious. Defendant also testified that he had contacted a detective agency between September 12 and 19 to determine if they could "bug" his room but was informed it would be illegal.

Ten character witnesses testified that defendant had an excellent reputation in the community for being a peaceful and law-abiding person but, after the State objected, were not permitted to give further opinions relating to his reputation for truth and veracity.

■■ Defendant first contends the indictment was invalid as it simply charged that he "requested Michael Dunaway to *arrange for*" the commission of murder whereas section 8—1(a) of the Criminal Code of 1961 states: "[a] person commits solicitation when, with intent that an offense be committed, he *commands, encourages* or *requests* another to commit that offense. (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 38, par. 8—1(a).) The test of the sufficiency of an indictment is whether it contains the elements of the offense intended to be charged, sufficiently apprises defendant of that offense to enable him to prepare a defense and would sufficiently identify that offense so as to sustain a plea of acquittal or conviction in bar of any further prosecutions for the same offense. (*People v. Norris* (1975), 28 Ill. App. 3d 590, 328 N.E.2d 577; *People v. Harvey* (1973), 53 Ill. 2d 585, 294 N.E.2d 269.) While it is apparent this indictment was inartfully drawn, we do not agree that it is fatally defective. Its language contains all of the elements of the offense of solicitation and describes the offense charged in a manner sufficient to enable defendant to prepare his defense and to identify it for use in any future plea in bar.

■■■ Defendant contends next the trial court erred in denying his motion to suppress the two tape recordings and in admitting them in evidence in trial. Section 14—2(a) of our Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 14—2(a)), during the time in question, prohibited the use of an eavesdropping device to hear or record a conversation except with the consent of both parties to the conversation or with the consent of one party and at the request of the State's Attorney. Defendant argues that the authorization of an Assistant State's Attorney does not meet the requirement of this provision; however, this court has held that the authorization of an Assistant State's Attorney does satisfy the statute. (*People v. Holliman* (1974), 22 Ill. App. 3d 95, 316 N.E.2d 812.) He further contends the trial court's determination that Dunaway validly consented to the use of an eavesdropping device during his conversation with defendant was against the manifest weight of the evidence. Defendant refers to Dunaway's age of 17 years and the fact he then had been charged with burglary in another county, suggesting he was coerced into assisting the investigating officers. The evidence also disclosed, however, that it was Dunaway who first approached the Elmhurst Police Department concerning the defendant and that he had executed a written consent form authorizing the recording of his conversation with defendant. In his testimony in trial Dunaway did not suggest he had been compelled to so assist the officers and defendant did not at that time make inquiry of him in that regard. The finding of the trial court that the requirements of the eavesdropping statute had been met was fully supported by the evidence in this case.

■■ He further contends the admission of the September 19 tape recording in evidence was error because the recording equipment had been turned off by the monitoring officers when Dunaway and defendant left defendant's house, thereby keeping from the jury a portion of their conversation and depriving defendant of a fair trial. Officer O'Connell testified he had turned the tape recording machine off at that time because the parties were riding in an automobile and its engine prevented the transmitter carried by Dunaway from operating. In fact, nothing could have been recorded during most of that period. Both defendant and Dunaway testified in trial to all of their conversations, whether recorded or otherwise, and defendant was not prejudiced by the circumstance to which he refers.

■■■ Defendant next contends the trial court erred in precluding Gordon Schiavone, whom he called as a witness, from testifying to a conversation Schiavone had with defendant shortly after Dunaway left defendant's home on September 12. Defendant contends, alternately, that the conversation was an admissible exception to the hearsay rule as a spontaneous declaration or that it was not hearsay at all because it was a declaration of intent not offered by defendant to prove the truth of the matter asserted by the witness in relating defendant's conversation with him on that occasion. Defendant, however, made no offer of proof regarding Schiavone's testimony and did not apprise the trial judge of the expected content of the witness' out of court conversation with defendant. In our view the trial court correctly determined the conversation was not admissible as a spontaneous declaration (see *People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804) and, not having been informed that Schiavone was expected to testify regarding defendant's intent or mental state at the time of the offense charged, the trial court had no basis for permitting the testimony to be admitted in evidence and correctly sustained the State's objection. See *People v. Rosa* (1977), 49 Ill. App. 3d 608, 613-14, 364 N.E.2d 389, 392.

■■ Defendant further contends, however, he was unfairly prejudiced by the State's argument to the jury in which the prosecutor pointed out that although the defendant had testified to his side of the September 12 conversation with Schiavone, that Schiavone did not testify to it, thereby inferring Schiavone would have disagreed with defendant's testimony. We agree that the argument was improper and should not have been made. It is apparent Schiavone failed to testify to that conversation only because the State's objection prevented him from doing so. We do not believe, nevertheless, that the improper argument was a material factor in defendant's conviction. The jury was equally aware that the State had objected to Schiavone's testimony and by that action had prevented the witness from further inquiry into the conversation in question. It is

unlikely the jury would give credence to the argument suggested by the State.

■■ Defendant next contends the trial court erred in precluding his character witnesses from expressing their opinions of his reputation in the community for truth and veracity. Evidence of a good reputation for truth and veracity of a witness who has testified, as did defendant herein, is not made admissible simply because the witness has testified in the trial. It is only after his credibility has been placed in issue that the introduction of supporting reputation evidence is warranted. For example, such evidence would be admissible where the opposing party has produced evidence the witness had a bad reputation for truth and veracity, impeached him by evidence of a previous conviction or attacked his testimonial veracity in cross-examination; mere contradiction of the witness' testimony, however, is not sufficient to allow the introduction of supportive reputation testimony. (*Tedens v. Schumers* (1884), 112 Ill. 263; *People v. Griffith* (1978), 56 Ill. App. 3d 747, 756, 372 N.E.2d 404, 411; see Mauet, *Reputation Evidence in Criminal Trials*, 58 Chi. B. Rec. 72 (1976); see also *People v. Weathers* (1974), 23 Ill. App. 3d 907, 320 N.E.2d 442.) As defendant's veracity had not been first attacked, the exclusion of testimony regarding defendant's reputation for truth and veracity was not erroneous.

■■ Defendant also contends the trial court erred in allowing the jury to hear again the two tape recordings during its deliberation. The jury had informed the trial court it was stalemated but that there was a reasonable probability it could reach a verdict if it were permitted to again listen to the tape recordings of Dunaway's conversation with defendant. The trial court stated that in that circumstance it would exercise its discretion and allow the tapes to be replayed as requested as they were somewhat unclear in parts and difficult to understand. We do not find the trial court abused its discretion in this regard.

■■ Defendant contends finally that the evidence was insufficient to establish his guilt beyond a reasonable doubt. The determination of a jury will not be set aside unless the evidence upon which it arrived at its verdict is so improbable, unreasonable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt (*People v. Tate* (1976), 63 Ill. 2d 105, 345 N.E.2d 480) and we do not find that to be the case here.

For the reasons we have discussed the judgment of the Circuit Court of Du Page County will be affirmed.

Affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.