THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LYLE K. COLCLASURE, Defendant-Appellant.

Fifth District No. 5—89—0263

Opinion filed July 27, 1990.

1040

Clyde L. Kuehn, of Kuehn, Rhein & Trentman, of Belleville, for appellant.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Defendant, Lyle Colclasure, was convicted after a jury trial of first-degree murder and sentenced by the circuit court of St. Clair County to 26 years' imprisonment in connection with the shooting death of Penny DeLong on October 30, 1988. Defendant appeals both his conviction and sentence. We affirm.

On the day of the shooting, defendant and the victim, Penny De-Long, defendant's then live-in girlfriend, were to get together with some of her friends before leaving town. Defendant, however, had to work longer than expected. After he got off work, defendant met Penny at a nearby tavern where she had been waiting for several hours. Penny had been drinking and was upset with defendant for being so late. The two argued and then stayed to drink for awhile before returning to the trailer in which they were living. Once back at the trailer, the two began quarreling again. Anger turned to rage precipitating a rather violent fight. At one point in the scuffle, defendant picked up his gun, a 30/30 rifle, from the corner of the bedroom in order to scare Penny. Instead of retreating, according to defendant, Penny grabbed for the gun. While pushing and shoving each other with the gun in between, Penny grabbed the gun or defendant's arm at the same time that defendant pushed her down on the bed. As she hit the bed, the gun fired, shooting off a portion of the top of her head and grazing the outside of her left index finger. The autopsy revealed the gunshot was fired a distance of some 6 to 12 inches from the victim's face with the bullet entering near her right eye at a slight right to left and front to back direction. Once defendant realized Penny was dead, defendant took the gun to Penny's car in order to flee. After putting the gun inside, he stopped and called his mother. She advised him to call the police. Defendant agreed and waited inside the trailer until the police arrived. Once the officers identified themselves, defendant kicked open one of the trailer doors and exited. He told the police "she is in there dead" and that he had shot her with a 30/30 carbine. Consistent with defendant's version of the incident, the jury was instructed on both involuntary manslaughter and first-degree murder. The jury chose to believe the State's version, however, that defendant deliberately came up to Penny while she was lying on the bed and shot her between the eyes and, accordingly, found him guilty of first-degree murder.

Defendant first argues on appeal he was denied his sixth amendment right to a jury trial by being prohibited from exercising 10 peremptory challenges as afforded by statute (Ill. Rev. Stat. 1987, ch.

38, par. 115—4(e)) in contrast to the seven granted by Supreme Court Rule 434(d) (107 Ill. 2d R. 434(d)). Defendant believes the number of peremptory challenges is a substantive right at the very heart of the adversary process guaranteeing a fair trial by jury upon which Rule 434(d) infringed to his detriment. Defendant specifically points out that in his effort to select a fair and impartial jury, he exercised all seven peremptory challenges and would have excluded two other unfavorable jurors if he had been given 10.

Article II, section 1, of the Illinois Constitution of 1970 separates the government's power into three coequal branches with article VI, section 1, vesting judicial power in the courts. Judicial power embraces everything necessary to the full performance of judicial functions, including the adjudication and application of law, the administration of the courts and the imposition of criminal sentences. (*People v. Felella* (1989), 131 Ill. 2d 525, 538, 546 N.E.2d 492, 497; *People v. Jackson* (1977), 69 Ill. 2d 252, 256-57, 371 N.E.2d 602, 604.) Because no branch may exercise the powers belonging to another (see *Felella*, 131 Ill. 2d at 538, 546 N.E.2d at 497), if the power is judicial in character, it necessarily follows that the legislature is expressly prohibited from exercising it. (See *People v. Cox* (1980), 82 Ill. 2d 268, 274, 412 N.E.2d 541, 544.) While the legislature is vested with the power to enact laws, it cannot constitutionally enact laws that unduly infringe upon the powers of the court. (See *Felella*, 131 Ill. 2d at 538, 546 N.E.2d at 497.) Admittedly, the legislature may enact laws complementing the authority of the judiciary, but here, section 115—4(e) of the Code of Criminal Procedure of 1963 directly conflicts with Supreme Court Rule 434(d). In such instances, the rule prevails. (See *Felella*, 131 Ill. 2d at 538, 546 N.E.2d at 498; *People v. Walker* (1988), 119 Ill. 2d 465, 475, 519 N.E.2d 890, 893; *Cox*, 82 Ill. 2d at 274, 412 N.E.2d at 545.) Were it otherwise, the judiciary would be nothing more than an extension of the legislature. *Walker*, 119 Ill. 2d at 475, 519 N.E.2d at 893.

The issue of how many peremptory challenges are allowed in a given type of case pertains to the administration of the courts. It is a matter of trial detail, and as a trial detail, best left to the courts to regulate. Clearly, the number of peremptory challenges is limited as a matter of court procedure. It is not a substantive right of the defendant. (See *People v. Whitlock* (1988), 174 Ill. App. 3d 749, 769, 528 N.E.2d 1371, 1382.) The Illinois Constitution does not state the number of constitutionally required peremptory challenges. Rather, the basic constitutional right is trial by an impartial jury. (See *Jackson*, 69 Ill. 2d at 260, 371 N.E.2d at 606.) Defendant is not

being denied that right to a fair and impartial jury merely because the number of peremptory challenges is limited by supreme court rule; he still is granted unlimited challenges for cause against prospective jurors. Consequently, as the number of peremptory challenges is a matter of trial detail, it is controlled by the rules established by the supreme court, not by the legislature. (See *Whitlock,* 174 Ill. App. 3d at 769, 528 N.E.2d at 1382; see also *Jackson,* 69 Ill. 2d at 260, 371 N.E.2d at 606.) Under the separation of powers, the trial court properly denied defendant's motion requesting 10 peremptory challenges.

Defendant next argues the verdict is against the manifest weight of the evidence because the State did not prove beyond a reasonable doubt that he intended to kill or do great bodily harm to Penny when the offense was committed.

■■ ■ A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*E.g., People v. Phillips* (1989), 127 Ill. 2d 499, 509, 538 N.E.2d 500, 503; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276; *People v. Carlson* (1980), 79 Ill. 2d 564, 583, 404 N.E.2d 233, 241.) As a court of review, it is not our function to retry a defendant. Rather, the relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*E.g., People v. Eyler* (1989), 133 Ill. 2d 173, 191, 549 N.E.2d 268, 276; *Phillips,* 127 Ill. 2d at 509-10, 538 N.E.2d at 503; *Collins,* 106 Ill. 2d at 261, 478 N.E.2d at 277.) Resolution of guilt or innocence, credibility of witnesses and conflicts in evidence lies exclusively within the province of the jury. *E.g., Eyler,* 133 Ill. 2d at 191, 549 N.E.2d at 276; *Whitlock,* 174 Ill. App. 3d at 763, 528 N.E.2d at 1379; *People v. Wilkins* (1976), 36 Ill. App. 3d 761, 765-66, 344 N.E.2d 724, 728.

■■■■ To prove the crime of murder, it is not necessary to show that defendant possessed a specific intent to kill or do great bodily harm or knew with certainty that his acts would achieve such results. It is sufficient to show that he voluntarily and willfully committed an act, the natural tendency of which was to destroy another's life. (*E.g., People v. Bartall* (1983), 98 Ill. 2d 294, 307, 456 N.E.2d 59, 65; *People v. Whitt* (1986), 140 Ill. App. 3d 42, 50, 487 N.E.2d 1246, 1251.) Intent to kill or cause great bodily harm is not commonly proved by direct evidence. Rather, intent is inferred from the character of the defendant's acts as well as the circumstances surrounding the commission of the offense. (*People v. Terrell* (1989),

132 Ill. 2d 178, 204, 547 N.E.2d 145, 155-56; *Whitt,* 140 Ill. App. 3d at 50, 487 N.E.2d at 1251.) Generally, when a defendant intentionally uses a deadly weapon upon his victim, it may properly be inferred he intended to cause the death of that victim. (*Terrell,* 132 Ill. 2d at 204, 547 N.E.2d at 156; *Bartall,* 98 Ill. 2d at 307, 456 N.E.2d at 65.) Ultimately, whether defendant is guilty of murder because his act created a strong probability of death or great bodily harm or whether he is guilty of involuntary manslaughter because his acts created a substantial and unjustifiable risk of such result is a question for the trier of fact. (See *Bartall,* 98 Ill. 2d at 307, 456 N.E.2d at 65; *Carlson,* 79 Ill. 2d at 582, 404 N.E.2d at 241.) Here, the jury was instructed on both crimes and found defendant guilty of murder. We cannot say the evidence does not support the jury's verdict.

 Defendant admitted to picking up his gun to scare Penny; he also admitting to cocking it to scare her with the noise. He further testified he had his hand on the trigger when the gun discharged. The evidence revealed that in order for the gun to fire, there would have had to been a finger on the trigger in order to move the trigger block out of the way. Defendant further told the police when they arrived he had shot the victim. Defendant contends, however, the shooting was accidental. Yet, he made no statement to the police pertaining to Penny's struggling with him causing the gun to discharge and, in fact, initially stated she was lying in bed when the gun went off. In addition, a live rifle shell was found on the floor of the bedroom next to the victim's bed. The gun was found in her car. Although there were many unidentifiable smudges, none of Penny's fingerprints appeared on the gun. The evidence also revealed defendant apparently cocked the rifle after it discharged as a live shell was found in the chamber. A spent shell was found in defendant's pocket. We further note the injury to the victim's finger was consistent with her shielding her face from being shot at close range. Defendant's use and cocking of the gun were more than sufficient evidence to demonstrate he intended to kill Penny or do her great bodily harm. We see no reason to disturb the jury's verdict in this instance.

Defendant next contends the court erred in refusing to allow him to introduce evidence of his reputation for truth and veracity in the community. Defendant admits one's reputation for truth and veracity generally is not a character trait relevant to any issue in the offense of murder, but defendant asserts here such evidence was relevant as the main issue was his credibility and truthfulness.

 ██ Evidence of a defendant's reputation for truth and ve-

racity is admissible under two circumstances: When it relates to some issue involved in the crime charged (see *People v. Griffith* (1978), 56 Ill. App. 3d 747, 756, 372 N.E.2d 404, 411), or when the defendant's reputation has first been attacked as being bad (see *People v. George* (1978), 67 Ill. App. 3d 102, 108, 384 N.E.2d 377, 381). It is not admissible merely because defendant chooses to testify at trial or his testimony is contradicted by others. (See *George*, 67 Ill. App. 3d at 108, 384 N.E.2d at 381.) Only after the defendant's credibility is placed in issue is the introduction of supporting reputation evidence warranted. (See *People v. Doll* (1984), 126 Ill. App. 3d 495, 501, 467 N.E.2d 335, 340; see also *Griffith*, 56 Ill. App. 3d at 756, 372 N.E.2d at 411.) Here, defendant's veracity had not been first attacked. The trial court's ruling on the State's motion *in limine* excluding testimony regarding defendant's reputation for truth and veracity therefore was not erroneous. (See *George*, 67 Ill. App. 3d at 108, 384 N.E.2d at 381-82.) Defendant counters his credibility was placed in issue, however, after being cross-examined concerning the differences in his testimony at trial and earlier statements made to the police. Whether or not such inconsistencies called into question defendant's general reputation for truth and veracity, defendant was given an opportunity to rehabilitate his testimony. More importantly, he chose not to raise the issue of presenting reputation evidence again. We find no error in the trial court's decision in this matter.

Defendant's final argument on appeal concerns his sentence. Defendant believes his sentence should be reduced because the trial court improperly considered Penny's death as a factor in aggravation when her death was an element of first-degree murder. Defendant further points out he has no prior criminal history, had been gainfully employed for a number of years prior to this incident, has good potential for rehabilitation and is unlikely to commit such an offense in the future.

■■ ■ In general, sentences are to be determined according to the seriousness of the offense while giving adequate consideration to relevant mitigating circumstances, including the rehabilitative potential of the defendant. (See *People v. Sanchez* (1986), 115 Ill. 2d 238, 274, 503 N.E.2d 277, 291; *People v. La Pointe* (1982), 88 Ill. 2d 482, 493, 431 N.E.2d 344, 349; *Carlson*, 79 Ill. 2d at 587, 404 N.E.2d at 243.) A reasoned judgment as to the proper penalty to be imposed therefore must be based upon the particular circumstances of each individual case. (*People v. Saldivar* (1986), 113 Ill. 2d 256, 268, 497 N.E.2d 1138, 1143.) Such a judgment depends upon many relevant factors, including the defendant's demeanor, habits, age, mentality,

credibility, general moral character, social environment, as well as the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by that defendant. (*Saldivar*, 113 Ill. 2d at 268-69, 497 N.E.2d at 1143.) A sentence based on improper factors, such as death as an aggravating factor when implicit in the offense, however, cannot be affirmed unless we can determine from the record that the weight placed on such an improperly considered aggravating factor was so insignificant as to not lead to a greater sentence. (*People v. Martin* (1988), 119 Ill. 2d 453, 458, 519 N.E.2d 884, 886.) This does not mean that the trial court in fashioning the defendant's sentence when faced with a murder conviction cannot consider the force employed and/or the physical manner in which that death was brought about. (See *Saldivar*, 113 Ill. 2d at 269-71, 497 N.E.2d at 1143-44.) This is just such a case. Here, the trial court explicitly recognized death was an element inherent in the offense. It did not, however, give Penny's death undue influence, but rather directed its comments to the manner in which that death was inflicted. Specifically, the court noted defendant had the gun available within easy reach and that the gun was already loaded, ready to be picked up, cocked and fired at a moment's notice. The court concluded that if people did not keep loaded guns around, maybe "this type of thing wouldn't happen in family argument type situations, and there are all too many deaths of that nature." Not every reference involving a factor implicit in an offense gives rise to reversible error. See *People v. Barney* (1982), 111 Ill. App. 3d 669, 679, 444 N.E.2d 518, 525; see also *People v. Bennett* (1987), 159 Ill. App. 3d 172, 185, 511 N.E.2d 1340, 1348.

The court heard argument on defendant's behalf concerning all possible mitigating factors and further considered letters written on defendant's behalf requesting that the minimum sentence be imposed. Defendant's sentence of 26 years falls well within the range of 20 to 60 years for a conviction of first-degree murder. As has been repeatedly stated, the trial court's sentencing determination is entitled to great weight, and absent an abuse of discretion, will not be overturned. (*Felella*, 131 Ill. 2d at 541, 546 N.E.2d at 499; *La Pointe*, 88 Ill. 2d at 492-93, 431 N.E.2d at 348-49; *People v. Generally* (1988), 170 Ill. App. 3d 668, 677, 525 N.E.2d 106, 111.) The manner in which the offense occurred here outweighed all of the mitigating factors to justify a sentence exceeding the statutory minimum. Under such circumstances, we cannot say the trial court abused its discretion in this instance. *La Pointe*, 88 Ill. 2d at 493, 431 N.E.2d at 349; *Cox*, 82 Ill. 2d at 279-80, 412 N.E.2d at 547. *Cf.*

*People v. Goodwin* (1980), 83 Ill. App. 3d 203, 206-07, 403 N.E.2d 1051, 1054.

For the aforementioned reasons, we affirm the judgment of the circuit court of St. Clair County.

Affirmed.

WELCH and CHAPMAN, JJ., concur.