THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT W. KRAUSE, Defendant-Appellant.

Second District   No. 2—91—0438

Opinion filed March 3, 1993.

Glenn M. Sowa, of Law Offices of Donahue, Sowa & Bugos, of Geneva, for appellant.

Dallas C. Ingemunson, State's Attorney, of Yorkville (William L. Browers and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

Defendant, Robert W. Krause, was found guilty by a jury of official misconduct (Ill. Rev. Stat. 1991, ch. 38, par. 33—3(c)). The court sentenced defendant to a 30-month term of probation. Defendant appeals his conviction, raising the following issues: (1) whether the trial court erred in denying defendant's motion to dismiss the indictment; (2) whether defendant was proved guilty of the offense beyond a reasonable doubt; and (3) whether the trial court erred in prohibiting defendant from offering character testimony in his defense.

Defendant first contends that it was error to deny his motion to dismiss the indictment and his motion in arrest of judgment because the indictment failed to state an offense. The indictment charged that, on July 23, 1990, defendant, "a public employee *** committed misconduct when, in his official capacity as a Kendall County deputy patrolman, he with intent to obtain personal advantage for himself performed an act in excess of his lawful authority in that he utilized the Law Enforcement Data System (LEADS), in his official capacity requesting computer information on a person by the name of Judith G. Zydowsky [sic], *** said information being obtained for the purpose of facilitating the offense of prostitution."

■■ The standard a reviewing court applies to determine the sufficiency of an indictment which is challenged for the first time on appeal is whether the indictment apprised the defendant of the precise offense charged with sufficient specificity so that he could prepare his defense and plead the resulting conviction as a bar to future prosecutions based on the same conduct. (*People v. Thingvold* (1991), 145 Ill. 2d 441, 448.) However, defendant in the present case moved to dismiss the indictment before trial. Our analysis, therefore, includes whether the indictment complies with the requirements of the Code of Criminal Procedure of 1963. (See Ill.

Rev. Stat. 1991, ch. 38, par. 111—3(a); *Thingvold*, 145 Ill. 2d at 448.) Section 111—3(a) requires the indictment to state the name of the offense and its statutory section, the nature and elements of the offense, the date and county where the offense was committed as definitely as can be done, and the name of the accused, if known, or any name or description of an unknown accused which will allow identification with reasonable certainty. (Ill. Rev. Stat. 1991, ch. 38, par. 111—3(a).) The language of the statute may be sufficient to apprise the defendant of the nature and elements of the offense; however, if the statutory language does not particularize the offense, the indictment must specify the act the defendant committed. (*People v. Wisslead* (1985), 108 Ill. 2d 389, 394-95.) Section 33—3(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 33—3(c)) is one of those statutes which, standing alone, does not particularize the offense. *People v. Samel* (1983), 115 Ill. App. 3d 905, 909.

■ Defendant first argues that the allegations in the indictment, that defendant performed an act in excess of his lawful authority and that defendant, in his official capacity, requested computer information, negate each other. We disagree. The elements of the offense include that the defendant, in his official capacity, performed an act in excess of his lawful authority. (Ill. Rev. Stat. 1991, ch. 38, par. 33—3(c).) Moreover, a public official may act within the scope of his official duties, yet act in excess of his lawful authority at the same time. (*Cf. People v. Scharlau* (1990), 141 Ill. 2d 180, 196.) "An act is performed in one's official capacity if it is accomplished by exploitation of his position as a public officer or employee." (*People v. Kleffman* (1980), 90 Ill. App. 3d 1, 3.) Thus, these allegations are not mutually exclusive, but instead they form the basis of the offense.

■ Defendant further argues that the indictment is deficient because it fails to allege facts sufficient to inform defendant of the nature of the charge against him. According to defendant, the indictment fails to particularize the personal advantage defendant intended to obtain. This argument lacks merit. The indictment clearly states that the personal advantage was the facilitation of the prostitution in which defendant intended to engage. This language is sufficient to apprise defendant of the nature of the charge against him. See *People v. Mehelic* (1987), 152 Ill. App. 3d 843, 849.

■ Defendant incorrectly maintains that he was charged with official misconduct predicated on the offense of prostitution. What the indictment charges is official misconduct based on the improper

use of the LEAD system. (See *People v. Hollingsead* (1991), 210 Ill. App. 3d 750, 766-68 (the violation of a rule or regulation of an administrative body may form the basis for prosecution of official misconduct).) Thus, defendant's argument, that obtaining information via LEADS is not an act prohibited by the prostitution statute, is irrelevant. We conclude that the indictment was not deficient.

■■ We next address defendant's contention that he was not proved guilty of the offense beyond a reasonable doubt. The evidence at trial established that defendant was a patrol sergeant who worked the midnight shift. Defendant was required to abide by the rules and regulations of the Kendall County sheriff's department, including Rule 8, which provided in relevant part:

"[P]ersonal association with persons who have been convicted of a felony within the last five years or who are under criminal investigation or indictment, or who have an open and notorious reputation in the community for felonious activity is prohibited."

Rule 27 provided that an officer may use the sheriff's department facilities to obtain information only for law enforcement purposes, and Rule 59 prohibited an officer from using the sheriff's department facilities for private gain or advantage.

Judith Zydowski, an undercover Chicago police officer, testified that on July 23, 1990, she was investigating escort services to determine whether they engaged in prostitution. She found an ad in the Reader newspaper for a male escort. Zydowski called the telephone number listed in the ad, and a man answered. The man asked her a variety of personal questions, such as her name, her height, weight, date of birth and driver's license number. Zydowski testified that she did not give the man a fictitious name. Zydowski further testified that the man asked for the correct spelling of her name. The man instructed her to book a room at a hotel in Hillside, Illinois, and indicated that she would have to pay for the room. Zydowski asked how much he charged, and the man told her "he'd have to check [Zydowski] out" and call her back.

The Kendall County dispatcher testified that defendant telephoned her around 1:30 p.m. and asked her to run "a name and date of birth," a driver's license check, and a firearm owner's identification (FOID) check on Judith Zydowski. The dispatcher used the LEADS terminal to access this information. The dispatcher informed defendant that Zydowski "listed clear" and that Zydowski had a valid driver's license and a valid FOID card.

According to Zydowski, about 10 to 15 minutes after the initial phone conversation, the man called her back and told her he had checked Zydowski out. The man said his services cost $125 per hour and $50 for each additional hour. The man instructed Zydowski to obtain a room and call him back. Zydowski called the hotel and explained that she wanted a room for an undercover operation. The hotel management agreed, so Zydowski called the man back. He told her to go to the hotel and call him when she arrived there. The man also inquired into what type of man Zydowski wanted. She told him that she "was into men who were clean. He said that all the men were clean and that they all practiced safety." Zydowski then went to the hotel with two other police officers. When Zydowski got to the room, she called the man again. He informed her that he would be sending a man to the room within 30 minutes. After 30 minutes elapsed, the same man called the room and told Zydowski that the escort would arrive in 10 minutes.

About 10 minutes later, at approximately 3:30 p.m., Zydowski heard a knock on the hotel room door. She opened the door and admitted defendant into the room. Defendant identified himself as "Chris." Zydowski recognized his voice as the same voice on the phone. Defendant asked Zydowski for identification, and she gave him her driver's license. He looked at it and said it was okay. Zydowski told defendant that it was the first-year anniversary of her divorce and she was doing something spontaneous and crazy. Zydowski told defendant she wanted to have anal intercourse. He agreed, but wanted the money first. Zydowski then arrested defendant.

Defendant testified that he called the dispatcher and requested information on Zydowski because he wanted to determine if she was a felon. Defendant explained that he was attempting to abide by Rule 8 of the rules and regulations of the sheriff's department by seeking to avoid personal association with felons.

We will not reverse a conviction challenged on sufficiency of evidence grounds unless the evidence is so improbable that there remains a reasonable doubt of the defendant's guilt. (*People v. Eyler* (1989), 133 Ill. 2d 173, 191.) The standard of review is whether, considering all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 49.) It was the jury's function to assess the credibility of the witnesses and to resolve conflicts or inconsisten-

cies in their testimony based on the evidence. *People v. Frieberg* (1992), 147 Ill. 2d 326, 360.

The elements of official misconduct, as charged, require the State to prove that a public officer, in his official capacity, performed an act in excess of his lawful authority with the intent to obtain a personal advantage for himself. (Ill. Rev. Stat. 1991, ch. 38, par. 33—3(c).) Defendant argues that he cannot be convicted of the offense because Rule 8 of the Kendall County sheriff's department prohibits association with felons, and it was his purpose to abide by Rule 8 when he used the LEAD system. The State responds that the evidence showed that defendant violated two rules of the sheriff's department which prohibit the use of the resources and facilities of the sheriff's department for private gain.

The jury could have found that defendant's asserted reason for using the LEADS information was inherently improbable. To accept defendant's explanation, the jury would have had to believe that defendant wanted to avoid breaking a rule while breaking the law. The State presented evidence to show that defendant was using the LEAD system to determine whether his proposed client was an undercover police officer and, if so, he would not have arranged to meet with her. The jury might reasonably have believed that defendant, a police officer, would have known that undercover police officers do not use their actual names. Zydowski testified that she does not ordinarily use her real name when working undercover, and it was an exception that she gave her real name on this occasion. The evidence indicates that defendant failed to discover that Zydowski was a police officer because the LEADS information revealed that "Judith Zydowski" was an actual person and not a false undercover name. Thus, the jury might have found that defendant employed the LEAD system to facilitate prostitution by minimizing his risk of falling into the hands of undercover police investigators.

In any event, even if the jury had accepted as true defendant's claim that his only purpose in using LEADS was to comply with Rule 8 by avoiding association with felons, it might still have found that defendant's own testimony established the essential elements of official misconduct as charged. It is apparent from the testimony that defendant was acting in an official capacity in making an unauthorized request for the computer information, and he does not deny that he intended to engage in the offense of prostitution. He maintains, however, that in view of his professed Rule 8 motivation,

he had no intent to obtain a personal advantage for himself in requesting the information.

If defendant's motive in using LEADS was, as he claims, to avoid associating with felons during the course of his planned prostitution activity, it is no less evident that he intended to use the information for his personal advantage. Defendant was privileged neither to engage in criminal activity nor to utilize official computer records as a device for screening or selecting clients for his unlawful enterprise. We need not be concerned with why defendant found it necessary to screen his potential clients through LEADS. The fact that he did so, as an instrumental step preliminary to meeting with Zydowski, sufficiently demonstrates that it was his intention to use the computer information to facilitate his planned commission of an offense. Defendant must not now be heard to argue that he did not seek the information for his personal advantage. We conclude that defendant was proved guilty beyond a reasonable doubt.

■ Finally, defendant contends that the trial court erred in prohibiting him from presenting reputation testimony in his defense. Evidence of a defendant's reputation for honesty is admissible when it relates to some issue involved in the crime charged, or when the defendant's reputation for honesty has first been attacked by the State. (*People v. Colclasure* (1990), 200 Ill. App. 3d 1038, 1044-45; *People v. Doll* (1984), 126 Ill. App. 3d 495, 501.) Evidence of good reputation for truth and veracity is not admissible merely because a defendant has testified at trial. (*Colclasure*, 200 Ill. App. 3d at 1045; *Doll,* 126 Ill. App. 3d at 501.) Only after defendant's credibility has been placed in issue will supporting reputation evidence be warranted. For example, such testimony would be admissible where the State has presented evidence to show defendant's bad reputation for veracity, impeached defendant with a prior conviction, or attacked his veracity during cross-examination. Mere contradiction of defendant's testimony is not, in itself, sufficient to allow the introduction of supportive reputation testimony. (*People v. George* (1978), 67 Ill. App. 3d 102, 108.) We find in the record of the present case no indication that the State attacked defendant's testimonial veracity. The trial court correctly determined that defense evidence of defendant's good reputation for veracity was inadmissible on that basis.

Defendant further contends that the offense of official misconduct necessarily implicates the character trait of dishonesty and that defense reputation testimony was warranted on that separate basis. Even assuming, *arguendo,* that the trait of dishonesty is in-

herent in the offense as charged, it is our view that defendant's testimonial admissions effectively render irrelevant any consideration of defendant's reputation for honesty. We conclude, therefore, that error in excluding the testimony, if any, was harmless under the particular circumstances of this case. Further, the trial court correctly excluded defense reputation evidence relating to defendant's chastity or morality as irrelevant in view of defendant's testimony admitting that he intended to engage in prostitution.

The judgment of the circuit court is affirmed.

Affirmed.

WOODWARD and GEIGER, JJ., concur.